THE STATE OF OHIO, APPELLANT, *v.* LEUIN, APPELLEE.

[Cite as State *v.* Leuin (1984), 11 Ohio St. 3d 172.]

(No. 83-1661—Decided June 20, 1984.)

*Mr. James A. Berry,* prosecuting attorney, and *Mr. James W. Skogstrom,* for appellant.

*Mr. Horace W. Baggott, Sr.,* and *Mr. Daniel J. O'Brien,* for appellee.

*Per Curiam.* The question presented by this appeal is whether specific instances of conduct may be proved by extrinsic evidence to establish or attack the credibility of a witness. Evid. R. 608(B) provides that:

"Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified."

From the foregoing rule, it is apparent that specific instances of conduct, relating only to the credibility of a witness, may not be established by extrinsic evidence. If this were not the rule, trials could potentially become bogged down in an interminable parade of witnesses called to testify as to specific instances of conduct of a prior witness in an attempt to contradict the prior witness' testimony on a purely collateral matter.[3] The case at bar presents a textbook illustration.

Williams testified on direct examination that she never had sex with appellee at the office and that she had not received gifts of jewelry and clothing from appellee. On cross-examination by the prosecutor, Williams again denied receiving gifts from appellee and denied that appellee kept any pornographic slides or movies at the office. On rebuttal, the state produced witnesses who contradicted Williams' testimony by testifying that Williams and appellee did engage in sex at the office, that Williams did receive various gifts from appellee, and that appellee did keep pornographic movies and slides at the office. The state's rebuttal testimony, by the state's own admission, was offered solely in an attempt to impeach the testimony of Williams. This is precisely the mischief that Evid. R. 608(B) was intended to prevent. The court of appeals therefore correctly concluded that the admission of such testimony over appellee's objection was error.

That is not to say, however, that the state was prohibited from questioning Williams on cross-examination as to these specific instances of conduct. Evid. R. 608(B) allows, in the court's discretion, cross-examination on specific instances of conduct "if clearly probative of truthfulness or untruthfulness." Nevertheless, if the answers received on cross-examination do not satisfy the examiner, it is said that the examiner is bound by or "stuck" with the responses. See, e.g., *State* v. *Gardner* (1979), 59 Ohio St. 2d 14, 19 [13 O.O.3d 8].

Here, the prosecutor was permitted to, and did to an extent, confront

---

[3] The following example appears in McCormick, Evidence (2d Ed. Cleary Ed. 1972) 97-98, Section 47. Witness One observes a crime and testifies that the day was windy and cold and that he was wearing a green sweater. Witness Two may not then be called to testify that the day was warm and that Witness One was in shirtsleeves. It is explained that:

"To permit a dispute * * * about such extraneous or 'collateral' facts as the weather and the clothing of Witness One, that are material only for 'testing' the witness, by allowing the attacker to call other witnesses to disprove them is not practical. Dangers of surprise, of confusion of the jury's attention, and of time-wasting are apparent."

Williams on cross-examination with specific instances of her conduct which tended to contradict her testimony on direct examination. Notwithstanding Williams' denials of those specific instances of conduct on cross-examination, the prosecutor is not permitted to attempt to establish that conduct by extrinsic evidence. We hasten to add that the conduct that the state attempted to prove by extrinsic evidence in the case at bar was intended only to discredit Williams' testimony. This case does not present the situation where the evidence sought to be excluded by Evid. R. 608(B) was on a non-collateral matter or, in other words, was relevant to a material issue in the case.

We are further of the opinion that the error committed at the trial level was not harmless beyond a reasonable doubt. The erroneously admitted rebuttal testimony related to an alleged extramarital affair between appellee and one of his employees as well as the existence of certain pornographic material. Inasmuch as the charges against appellee were also sexually related, we are unwilling to say that the admission of the state's rebuttal testimony did not contribute to appellee's conviction. Furthermore, upon review of the record, we must conclude that the evidence against appellee, consisting virtually entirely of the testimony of the victims themselves, was not so overwhelming as to warrant sustaining appellee's conviction even in light of the error. See *State* v. *Ferguson* (1983), 5 Ohio St. 3d 160, 166, at fn. 5.

Accordingly, this judgment of the court of appeals is affirmed and the cause is remanded to the trial court for a new trial.

*Judgment affirmed*
*and cause remanded.*

CELEBREZZE, C.J., W. BROWN, SWEENEY, LOCHER, C. BROWN and J.P. CELEBREZZE, JJ., concur.

HOLMES, J., dissents.

HOLMES, J., dissenting. I dissent from the majority in that it has misconstrued the pertinent rules of evidence as they apply to the facts presented.

Under Evid. R. 607, the credibility of a witness may be attacked by an opposing party disclosing a contradiction in statements. There are two methods of impeachment by contradiction. One, self-contradiction involves the use of a prior statement made by the witness to contradict present testimony. Two, contradictions may involve the testimony of one witness which conflicts with a previous statement made by another witness. In either case it is for the trier of fact to determine the credibility of each witness.

A witness may not be impeached by evidence that merely contradicts his testimony on a matter that is entirely collateral to the case. *Byomin* v. *Alvis* (1959), 169 Ohio St. 395 [8 O.O.2d 420]. See, also, *State* v. *Cochrane* (1949),

151 Ohio St. 128 [38 O.O. 575]. However, the problem arises in determining what constitutes a collateral matter which is thereby deemed to be inadmissible extrinsic evidence.

This court has long recognized that extrinsic evidence is admissible when the matter offered in contradiction of one's testimony is in any way relevant to the issue at hand, or tends to show prejudice or interest with respect to the parties. *Kent* v. *State* (1884), 42 Ohio St. 426, 431. See, also, 3A Wigmore, Evidence (Chadbourn Rev. 1970), Section 1003. In addition, Evid. R. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

In my view, the testimony of Patty L. Gearhart and Beverly Gebhart sufficiently attacks the credibility of Rita Williams by contradicting her testimony and showing her interest in a party to the action as alluded to in *Kent, supra.* After Williams stated that she and Dr. Leuin did not have a sexual relationship, Gearhart testified that she observed the couple engaged in intercourse in appellee's office. The remaining testimony of Gearhart and Gebhart established that Williams and appellee were more than casual acquaintances and that Leuin had on numerous occasions invited staff personnel to view pornographic material in his office.

Such testimony is relevant to the issues presented for two reasons. First, it discredits Williams' testimony which was a substantial portion of appellee's defense. Second, the testimony concerned acts which took place in appellee's office, the very location in which the alleged crimes were committed.

The court of appeals committed error when it reversed the trial court's ruling. The admissibility of evidence rests within the sound discretion of the trial judge and should not be disturbed in the absence of a clear abuse of discretion. *O'Brien* v. *Angley* (1980), 63 Ohio St. 2d 159 [17 O.O.3d 98]. As noted by this court in *Calderon* v. *Sharkey* (1982), 70 Ohio St. 2d 218, 223 [24 O.O.3d 322], "close evidentiary questions are within the domain of the trial court."

It is my opinion that evidence of contradiction should be admitted in situations where such evidence is critical to determine the credibility of a witness' story. Here, there was a sufficient amount of conflicting testimony to allow the trier of fact to determine the credibility of each witness.

Accordingly, I would reverse the judgment of the court of appeals.