THE STATE OF OHIO, APPELLANT, *v.* WILLIAMS, A.K.A. BOOKER,
APPELLEE.

[Cite as State *v.* Williams (1986), 21 Ohio St. 3d 33.]

(No. 84-1945—Decided January 2, 1986.)

*Arthur M. Ney, Jr.*, prosecuting attorney, and *Paul R. Markgraf*, for appellant.

*Bartlett, Junewick & Weigle* and *Jane M. Grote*, for appellee.

*Per Curiam.* The issues presented in this appeal are: (1) whether the testimony proffered by appellee is admissible at trial despite R.C. 2907.02(D), the rape shield law; and (2) whether admitting such evidence violates Evid. R. 608(B). We find the evidence to be admissible, and thus we affirm the judgment of the court of appeals.

The rape shield law in Ohio, R.C. 2907.02(D),[1] essentially prohibits the introduction of any extrinsic evidence pertaining to the victim's sexual activity. The exceptions to this prohibition are evidence of the origin of semen, pregnancy, or disease, or of the victim's past sexual activity with the offender. In *State v. Gardner* (1979), 59 Ohio St. 2d 14 [13 O.O.3d 8], this court set forth the major reasons behind the enactment of the rape shield law:

"* * * First, by guarding the complainant's sexual privacy and protecting her from undue harassment, the law discourages the tendency in rape cases to try the victim rather than the defendant. In line with this, the law may encourage the reporting of rape, thus aiding crime prevention. Finally, by excluding evidence that is unduly inflammatory and prejudicial, while being only marginally probative, the statute is intended to aid in the truth-finding process."

The evidence at issue in this case is undeniably inadmissible under the rape shield law. Appellee claims, however, that the application of the rape shield law in this case violates his Sixth Amendment[2] right to confront witnesses against him.

---

[1] R.C. 2907.02(D) reads, in pertinent part:

"Evidence of specific instances of the victim's sexual activity, opinion evidence of the victim's sexual activity, and reputation evidence of the victim's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value."

[2] The Sixth Amendment to the United States Constitution reads:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public

In *Gardner, supra,* a similar claim was advanced by a rape defendant who attempted to call a witness to testify that the alleged victim had solicited the witness for sex at a previous time. The victim had testified earlier on cross-examination that she had never engaged in prostitution. In ruling on the admissibility of the defense witness' testimony, this court established a balancing test pursuant to *Davis* v. *Alaska* (1974), 415 U.S. 308, stating at 17:

"In determining whether R.C. 2907.02(D) was unconstitutionally applied in this instance, we must thus balance the state interest which the statute is designed to protect against the probative value of the excluded evidence."

The court concluded that, in this instance, the interest of the state outweighed the probative value of the testimony, and stated at 18:

"*Assuming that the instances might exist where prior sexual activity by the complainant with third parties is relevant,* we are not presented with such a situation in the present application of R.C. 2907.02(D)." (Emphasis added.)

Thus, the court acknowledged that in some circumstances evidence which the rape shield law would render inadmissible would nevertheless be admitted in furtherance of the defendant's constitutional rights. In *Gardner,* the excluded evidence was designed merely to impeach the victim's credibility, and thus had no probative value as to the alleged rape itself.

In the *Davis* case, *supra,* the Supreme Court held that a state shield law protecting the confidentiality of juvenile records was unconstitutional as applied therein. The court ruled that a key prosecution witness could be cross-examined as to his juvenile record to show possible bias in favor of the government. The court stated at 319:

"* * * In this setting we conclude that the right of confrontation is paramount to the state's policy of protecting a juvenile offender. Whatever temporary embarrassment might result to Green [the witness] or his family by disclosure of his juvenile record * * * is outweighed by petitioner's right to probe into the influence of possible bias in the testimony of a crucial identification witness." (Bracketed material added.)

In *State* v. *Ferguson* (1983), 5 Ohio St. 3d 160, this court again dealt with the rape shield law in the context of testimonial evidence relating to specific instances of the victim's sexual history. In *Ferguson,* the alleged victim testified that she had not had sexual intercourse within ten days prior to her confrontation with the defendant. The court held that the defendant's evidence in rebuttal was inadmissible, stating in paragraph two of the syllabus:

"R.C. 2907.02(D) will render inadmissible evidence of the rape

---

trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence."

victim's sexual activity with one other than the accused where the evidence: does not involve the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender; is offered simply to impeach the credibility of the victim; and is not material to a fact at issue in the case."

The evidence excluded in *Ferguson* was determined by the court to meet all three prongs of the above test.

The key factor in both *Gardner* and *Ferguson* is that the contested evidence was submitted merely to impeach the victim's credibility. The testimonial evidence was considered not probative of the determinative issue of fact: whether the victim was raped by the defendant on the date alleged.

The instant case presents circumstances distinguishable from those in *Gardner* and *Ferguson.* The contested issue in this case is *consent,* which directly relates to an element of the crime of rape. The victim testified on direct examination that she *never* consents to sex with men. The testimony proffered by appellee directly refutes this contention. As in *Davis,* this evidence is submitted for more than mere impeachment of a witness' credibility. The victim's credibility is indeed being impeached; however, the proffered evidence has a more important purpose, which is to negate the implied establishment of an element of the crime charged. For this reason, the probative value of the testimony outweighs any interest the state has in exclusion.

It is also significant that the *state* first elicited the testimony which inferred lack of consent. Had appellee initiated this inquiry, he would be bound by the victim's answer. *Gardner, supra.*

Accordingly, we find that the rape shield law as applied in this case violates appellee's Sixth Amendment right of confrontation.

We must next examine whether Evid. R. 608(B) precludes admissibility of the proffered evidence. The rule reads in pertinent part:

"(B)   Specific instances of the conduct of a witness, *for the purpose of attacking or supporting his credibility,* * * * may not be proved by extrinsic evidence. * * *" (Emphasis added.)

The intent of this rule is to prohibit the introduction of non-probative evidence. Since the proffered evidence in this case is probative of the factual issue of consent, and is offered for more than mere impeachment of credibility, Evid. R. 608(B) does not bar its admissibility.

Appellant claims that this court's recent decisions in *State* v. *Leuin* (1984), 11 Ohio St. 3d 172, and *State* v. *Kamel* (1984), 12 Ohio St. 3d 306, mandate reversal in this case. Both *Leuin* and *Kamel* involved, as here, the exclusion of testimonial evidence pursuant to Evid. R. 608(B).

In *Leuin,* charges of gross sexual imposition were brought against a dentist by two of his former patients. At trial, a dental assistant of defendant testified on direct examination by the defense that she and the defendant had never engaged in sex at the office.

The state offered the rebuttal testimony of a former employee of the dentist who testified that she inadvertently observed the aforementioned assistant engaged in sexual activity with the defendant at his office. We held that this testimony was inadmissible pursuant to Evid. R. 608(B) as it was extrinsic evidence offered to impeach a witness' credibility on a purely collateral matter. The court stated at 175:

"* * * This case does not present the situation where the evidence sought to be excluded by Evid. R. 608(B) was on a non-collateral matter or, in other words, was relevant to a material issue in this case."

Had the excluded testimony in *Leuin* been relevant to or probative of a material issue in the case, Evid. R. 608(B) would not have blocked its introduction.

*Kamel* is a similar example of how the rule operates to bar extrinsic impeachment evidence. In *Kamel*, a doctor and his wife were charged with endangering children and involuntary manslaughter in connection with the death of their two-year-old son. At trial, the doctor testified on cross-examination that he had never punished his son by grabbing the child's ear and slapping his face. He further testified in response to specific questioning of the state that he could not recall any punishment of this nature taking place at a Sears, Roebuck & Co. store.

The state offered in rebuttal the testimony of a witness who claimed to have observed such punishment being administered to another son of the defendants at a Sears store. This court held such testimony to be inadmissible pursuant to the clear dictates of Evid. R. 608(B).

The case at bar is distinguishable from both *Leuin* and *Kamel* in that the evidence herein is offered so as to negate the state's inference of an element of the crime. As discussed earlier in reference to the rape shield statute, the proffered testimony is not offered solely to impeach the credibility of the victim's testimony. Rather, the proffered testimony is directly probative of the issue of force, an element of the crime of rape. For this reason, Evid. R. 608(B) does not bar the introduction of the defense witness' testimony.

Accordingly, we affirm the judgment of the court of appeals.

*Judgment affirmed.*

SWEENEY, LOCHER, HOLMES, C. BROWN, DOUGLAS and WRIGHT, JJ., concur.

CELEBREZZE, C.J., dissents.

WRIGHT, J., concurring. In concurrence, I would emphasize that our holding today does not violate the important policy considerations underlying R.C. 2907.02(D), the rape shield law, as explained in the majority opinion and also in this court's previous decision in *State* v. *Gardner* (1979), 59

Ohio St. 2d 14, 17-18 [13 O.O.3d 8]. The rape shield law was enacted to protect rape victims; it should not also serve as a means to commit perjury as to a relevant, noncollateral matter. Tracy Washington testified on *direct examination* that she did not consent to sexual intercourse with Hank Williams because she was a lesbian. The exclusion of testimony to refute Washington's assertion regarding her sexual preference does not relate to the statutory goal of insulating a rape victim from an invasion of her sexual privacy when the victim herself raises the issue.

As stated in the majority opinion: "Had appellee initiated this inquiry, he would be bound by the victim's answer." See *Gardner, supra.* This would be the case even if the testimony elicited on cross-examination went to the heart of the consent issue. Because Tracy Washington waived the protection of the rape shield law, I join in affirming the judgment of the court of appeals.

CELEBREZZE, C.J., dissenting. This extrinsic evidence is clearly not admissible under Article VI of the Rules of Evidence to attack the credibility of the witness. However, I agree with the majority's conclusion that Evid. R. 608, standing alone, neither precludes nor permits introduction of the proffered testimony, in the event the evidence is relevant concerning the issue of consent.

In this regard, Evid. R. 105 recognizes that evidence may be inadmissible for one purpose yet admissible for another. In such instances, an Article IV examination must be conducted by the court to determine the limited admissibility, if any, of the evidence.

The majority essentially holds that extrinsic evidence concerning Tracy Washington's past sexual conduct is essential to the threshold issue of consent in this case and cannot therefore be excluded without violating appellee's Sixth Amendment right to confrontation. It is with this analysis that I part company with the majority. For the reasons that follow, I do not believe the evidence was admissible under Article IV nor do I find that Ohio's rape shield law was applied by the trial court in an unconstitutional manner.

Evid. R. 404(A)(2) provides that in rape cases evidence concerning the character of the victim is admissible only within the narrow exceptions provided by the controlling statute enacted by the General Assembly. In this regard, R.C. 2907.02(D) provides in pertinent part:

"Evidence of specific instances of the victim's sexual activity, opinion evidence of the victim's sexual activity, and reputation evidence of the victim's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value."

The multiple purposes of Ohio's rape shield law are to: guard the complainant's sexual privacy and protect her from undue harassment; discourage the tendency in rape cases to try the victim rather than the defendant; encourage the reporting of rape, thus aiding crime prevention; exclude evidence that is unduly inflammatory and prejudicial, while being only marginally probative; and aid in the truth-finding process. *State* v. *Gardner* (1979), 59 Ohio St. 2d 14, 17-18 [13 O.O.3d 8].

Concerning proffered testimony that a victim is a prostitute, this court held in *Gardner, supra,* at 18:

"'* * * Evidence that complainant had a reputation as a prostitute is not sufficiently probative of consent to outweigh the state's legitimate interest in excluding the testimony, at least where there is no suggestion in the record that financial arrangements were entered into for sexual activities in this instance.'"

In a more recent decision the court confirmed that it is not necessarily unconstitutional to exclude evidence of prior sexual activity with persons other than the accused. *State* v. *Ferguson* (1983), 5 Ohio St. 3d 160. In an instructive passage, the court held at 165:

"'* * * Further, *the key fact at issue at trial was whether the victim consented to sexual activity with appellee, not whether she had sexual intercourse two or ten days earlier.* Hence, we hold that R.C. 2907.02(D) will render inadmissible evidence of the rape victim's sexual activity with one other than the accused where the evidence: does not involve the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender; is offered simply to impeach the credibility of the victim; and is not material to a fact at issue in the case.'" (Emphasis added.)

I do not believe Washington, who at that time was a teenager in the ninth grade, opened the door for an attack on her credibility merely by testifying she did not consent to have sexual intercourse with appellee and that her sexual preference is for women.[3] In this regard, it must be

---

[3] I also disagree with Justice Wright's concurrence. Tracy Washington's candid admission of being homosexual did not permit the introduction of extrinsic evidence regarding her private sex life any more than if she had admitted being heterosexual, bisexual, or celibate.

Further, I take exception with Justice Wright's statement that Washington testified on direct examination that she did not consent to sexual intercourse with appellee *"because* she was a lesbian" (emphasis added). The record simply does not support such a finding.

During his opening statement to the jury, defense counsel argued that Washington was a prostitute and that appellee was her pimp. Washington initially testified on direct examination that she never consented to having brutal vaginal and anal intercourse with appellee and had not previously had sexual intercourse with him. During the latter portion of her direct testimony, she then refuted defense counsel's contentions as follows:

"Q. Have you ever gone out and solicited for sex or turned a trick?
"A. No, sir, I haven't.
"Q. Can you tell us why?
"A. I'm gay.
"Q. And by 'gay,' you mean you do not have sex with men; is that correct?

recognized that the trial judge *did* permit appellee to testify that the victim was a prostitute, that he was her pimp, and that she consented to have sex with him never suggesting that financial arrangements were entered into. However, the trial judge correctly drew the line on such evidence by excluding testimony from other witnesses concerning the victim's past sexual activity and reputation.[4] The trial judge simply recognized that appellee had no Sixth Amendment right to confront the rape victim with irrelevant extrinsic evidence.

The evidence excluded admittedly had slight relevancy value, as would nearly all evidence concerning a rape victim's past sexual conduct offered by an accused. However, the probative value of this evidence is substantially outweighed by its inflammatory and prejudicial nature. Admission of such evidence would clearly impeach the victim's credibility and character, and more importantly puts her on trial, the exact mischief our General Assembly sought to avoid with the rape shield statute.

The contention that the victim is gay, and appellee's attempt to dispute the assertion, has inappreciable bearing on the issue of consent to have sex with the accused on this occasion. There was no claim that appellee purchased her services and I find that extrinsic evidence of her alleged reputation as a prostitute falls squarely within the purpose of the exclusion contained in the rape shield law as interpreted by the court's past holdings in *Ferguson* and *Gardner, supra.*

"'* * * It is within the sound discretion of a trial court to determine the relevancy of evidence and to apply R.C. 2907.02(D) to best meet the purpose behind the statute." *State* v. *Leslie* (1984), 14 Ohio App. 3d 343, 346. I conclude that appellee's constitutional rights were not denied and that the

---

"A. That's right."

It was during the following testimony on *cross-examination* that *defense counsel* first linked up Washington's sexual preference with the issue of consent:

"Q. All right, and you consider yourself as a person who likes females, rather than males, in your sexual orientation, which is towards other females; is that correct?

"A. That's correct.

"Q. All right. You offer this as a basis for the proposition that you would therefore not voluntarily have sex or intercourse with a male person; is that the reason you offer it?

"A. That is right."

Appellee can not complain of evidentiary errors resulting from his own inquiry at trial in this fashion. Further, if defense counsel chooses to embark on such a perilous line of questioning during the cross-examination of a rape victim, he should be held to the response. Cf. *State* v. *Leuin* (1984), 11 Ohio St. 3d 172, 175.

[4] A passage from Judge Palmer's dissent to the decision of the appellate court below is most interesting in this regard:

"'* * * I can see no difference between this situation and one in which a witness testifies that she did not consent to sexual conduct because it violated her religious and moral principles. Surely we would not permit argument that such testimony would open the door to rebuttal witnesses who would testify that the witness, on the contrary, was an amoral atheist who slept with a succession of strangers."

trial court did not abuse its discretion in excluding the evidence. Accordingly, I would reverse the judgment of the court of appeals and affirm the convictions.