918 P.2d 254

**In the Interest of John DOE, Born on September 5, 1977, Minor–Appellant.**

**No. 16195.**

Intermediate Court of Appeals of Hawai'i.

May 14, 1996.

As Amended June 5, 1996.

Joyce K. Matsumori–Hoshijo, Deputy Public Defender, on the briefs, Honolulu, for defendant-appellant.

Doraine F. Meyer, Deputy Prosecuting Attorney, City and County of Honolulu, on the brief, Honolulu, for plaintiff-appellee.

Before BURNS, C.J., and WATANABE and ACOBA, JJ.

WATANABE, Judge.

Minor–Appellant John Doe (Defendant) appeals from the April 24, 1992 judgment of the Family Court of the First Circuit, convicting him of second degree sexual assault of a mentally defective person.

We conclude that the family court erred when it (1) held that the State of Hawai'i (the State) did not have to prove beyond a reasonable doubt that Defendant knew that the complaining witness (Complaining Witness) was mentally defective; and (2) erroneously prohibited defense counsel from cross-examining (a) the State's expert psychologist regarding information he had relied upon in rendering his opinion that Complaining Witness was mentally defective, and (b) Complaining Witness about her use of birth control pills to prevent pregnancy. Accordingly,

we vacate the judgment and remand for a new trial.

## BACKGROUND

As a result of an incident which occurred on the evening of February 24, 1991, Defendant, a thirteen-year-old male, was charged with "knowingly subject[ing] to sexual penetration [Complaining Witness], who is mentally defective, mentally incapacitated or physically helpless, by inserting his penis into her vagina, thereby committing the offense of Sexual Assault in the Second Degree in violation of Section 707–731(1) of the *Hawaii [Hawai'i] Revised Statutes.*"

The evidence at trial revealed that at the time of the alleged offense, Complaining Witness was a nineteen-year-old female who had graduated from Kahuku High School the previous year. She worked at the Kaneohe Goodwill Store, color-coding clothes for sale, and had recently moved back to Hau'ula to live with her father and stepmother (Stepmother). She had known Defendant since she was in high school.

On the evening in question, Complaining Witness and Defendant both visited the home of a neighbor, Clayton Domingues, also known as "Sonya" (Domingues). Domingues testified that shortly after Defendant arrived at her home, she saw Defendant and Complaining Witness enter her bedroom. Domingues immediately told them to get out because she didn't "allow anybody in [her] bedroom." Defendant and Complaining Witness then walked out of Domingues's house.

According to Domingues, Defendant and Complaining Witness re-entered Domingues's house about fifteen to thirty minutes later, and Defendant stated that he had

to go home. Domingues testified that Complaining Witness, who was "mentally retarded" and "slow," appeared "normal" at the time and was not acting differently from earlier that evening. "She just came in, asked for another cigarette, and we started talking, you know. That's about it." Complaining Witness remained at Domingues's house for another half hour, smoking and talking with Domingues, before leaving to return home.

Stepmother testified that after Complaining Witness returned home, "[s]he was sitting up on the end of her bed shaking and also crying[,]" had "her knees together with her hands between her knees[,]" and "was just scared." Complaining Witness also had blood stains on her panties. The next day, Stepmother contacted the police and took Complaining Witness to the Kapiolani Sex Abuse Treatment Center (Kapiolani), where Complaining Witness was examined by Dr. Wayne Lee (Dr. Lee), a specialist in the examination of sexual assault victims.

At Kapiolani, Complaining Witness complained of "pain inside of her vagina[,]" "bleeding from her vagina[,]" and "headaches[.]" Dr. Lee's examination revealed a recent tear of Complaining Witness's hymen, which Complaining Witness explained was the result of Defendant having placed his penis in her vagina.

Defendant was subsequently charged with committing the offense of sexual assault in the second degree.

## PROCEDURAL HISTORY

Prior to trial, Defendant filed a Hawai'i Rules of Evidence (HRE) Rule 412 (1985) [1]

---

1. Hawai'i Rules of Evidence (HRE) Rule 412 (1985) provided, in relevant part, as follows:

   **Rape cases; relevance of victim's past behavior.**

   (a) Notwithstanding any other provision of law, in a criminal case in which a person is accused of rape or sexual assault under any of the provisions of chapter 707, part V of the Hawaii [Hawai'i] Penal Code, reputation or opinion evidence of the past sexual behavior of an alleged victim of such rape or sexual assault is not admissible.

   (b) Notwithstanding any other provision of law, in a criminal case in which a person is

accused of rape or sexual assault under any of the provisions of chapter 707, part V of the Hawaii [Hawai'i] Penal Code, evidence of a victim's past sexual behavior other than reputation or opinion evidence is also not admissible, unless such evidence other than reputation or opinion evidence is:

   (1) Admitted in accordance with subsection (c)(1) and (2) and is constitutionally required to be admitted;

   . . . .

   (c)(1) If the person accused of committing rape or sexual assault intends to offer under subsection (b) evidence of specific instances of

"Motion to Allow Evidence of Alleged Victim's Sexual Behavior." In an affidavit attached to the motion, defense counsel ·stated that he had just learned that Complaining Witness may be involved in a relationship with a forty-year-old man and "[t]his information, if true, bears directly on the issues before this court, i.e., whether the [Complaining Witness] suffers from a disease, disorder or defect which renders her incapable of appraising the nature of her conduct."

The family court denied the motion, finding "no relevance as to whether or not the [Complaining Witness] was mentally incompetent or to what that level of mental competence was at the time of the offense...."

Trial commenced on April 23, 1992, and the first witness called to the stand was Dr. Thomas P. Loomis (Dr. Loomis), a licensed clinical psychologist who had been retained by the State to assess Complaining Witness's intellectual level, as well as her capacity to consent to sexual relations. Dr. Loomis testified that, based upon his examination of Complaining Witness, he believed that Complaining Witness was "mentally defective." Dr. Loomis stated that he tested Complaining Witness six months after the alleged incident and, at that time, Complaining Witness had a full-scale intelligence quotient (I.Q.) of approximately sixty, an indication that Complaining Witness was "mildly retarded." Dr. Loomis was of the opinion that

Complaining Witness functioned at the "mental age of approximately eleven[,]" and that, although her short-term memory was one of her stronger skills and she could perform simple repetitive tasks, such as dressing and feeding herself, her abstract thinking skills were extremely poor and she had "extreme deficits in her ability to see the similarities between things and ideas and categorize [them] into logical groups."

According to Dr. Loomis, Complaining Witness was able to describe what sexual intercourse is and knew that a woman could become pregnant or get "herpes" or "AIDS" from engaging in sexual intercourse. She also knew that a woman could prevent pregnancy "by taking the pills." Dr. Loomis stated, however, that Complaining Witness had "an incomplete understanding of the ... consequences of sexual conduct[,]" as well as "a poor understanding of people's motivations[,]" did not understand the dangers involved in having sexual relations or "how to protect herself from those dangers," and was "particularly poor" at predicting consequences. Dr. Loomis also testified that he had not discussed with Complaining Witness the moral implications of sexual intercourse, the concept of marriage, or societal views towards sexual intercourse outside of marriage.

On cross-examination, Dr. Loomis indicated that his opinion that Complaining Witness

the alleged victim's past sexual behavior, the accused shall make a written motion to offer such evidence not later than fifteen days before the date on which the trial in which such evidence is to be offered is scheduled to begin, except that the court may allow the motion to be made at a later date, including during trial, if the court determines either that the evidence is newly discovered and could not have been obtained earlier through the exercise of due diligence or that the issue to which such evidence relates has newly arisen in the case. Any motion made under this paragraph shall be served on all other parties and on the alleged victim.

(2) The motion described in paragraph (1) shall be accompanied by a written offer of proof. If the court determines that the offer of proof contains evidence described in subsection (b), the court shall order a hearing in chambers to determine if such evidence is admissible. At such hearing the parties may call witnesses, including the alleged victim, and offer relevant evidence. Notwithstand-

ing subsection (b) of rule 104, if the relevancy of the evidence which the accused seeks to offer in the trial depends upon the fulfillment of a condition of fact, the court, at the hearing in chambers or at a subsequent hearing in chambers scheduled for such purpose, shall accept evidence on the issue of whether such condition of fact is fulfilled and shall determine such issue.

(3) If the court determines on the basis of the hearing described in paragraph (2) that the evidence which the accused seeks to offer is relevant and that the probative value of such evidence outweighs the danger of unfair prejudice, such evidence shall be admissible in the trial to the extent an order made by the court specifies evidence which may be offered and areas with respect to which the alleged victim may be examined or cross-examined.

(d) For purposes of this rule, the term "past sexual behavior" means sexual behavior other than the sexual behavior with respect to which rape or sexual assault is alleged.

was not able to understand the consequences of her sexual behavior was based partly upon his discussions with Complaining Witness about her past sexual behavior. Defense counsel then attempted to probe Dr. Loomis about the information which the doctor had relied upon in arriving at his opinion. However, the family court sustained the State's objection that since Dr. Loomis had only been "called to make and render an opinion as to [Complaining Witness's] I.Q. level as well as for the specifics with regards to her ability to apprise [sic] sexual conduct," no foundation had been laid for the receipt of such evidence.

Dr. Loomis admitted that the tests he had administered to Complaining Witness contained no safeguards to ascertain whether Complaining Witness was telling him the truth. He also acknowledged that Complaining Witness had given him contradictory information and that she had tendencies toward grandiose fantasy. On redirect examination, however, Dr. Loomis was allowed to testify that, in his clinical judgment, Complaining Witness was telling the truth when he evaluated her.

Complaining Witness's testimony followed that of Dr. Loomis. Initially, Complaining Witness had difficulty remembering what had happened between her and Defendant on February 24, 1991. However, when asked why she was in court, she replied that Defendant had raped her. Complaining Witness then explained that Defendant had taken her clothes off and put his penis in her vagina, and that afterwards she went home feeling "shakey" (sic) and hurting "inside."

During defense counsel's cross-examination of Complaining Witness, the following colloquy took place:

Q. ... Do you know where babies come from?

A. Girls.

Q. Okay. Do you know how girls get pregnant?

A. Boys.

Q. Okay. And what do boys have to do to girls to get them pregnant?

A. Put their penis inside the vagina.

Q. Okay. Do you know how to stop girls from getting pregnant?

A. Take the pills.

Q. Okay. Do you take the pills?

A. Yes.

Q. You do. How long have you taken the pill?

[DEPUTY PROSECUTING ATTORNEY]: Your Honor, I'm gonna object.

THE COURT: Sustained.

[COMPLAINING WITNESS]: I don't know.

THE COURT: The previous answer will be stricken.

During a brief hearing outside of Complaining Witness's presence, defense counsel argued that Complaining Witness's response was relevant, under *State v. Gonsalves*, 5 Haw.App. 659, 706 P.2d 1333 (1985), to determine whether Complaining Witness was capable of appraising the nature of her conduct, one of the elements for determining her mental defectiveness. The family court, concluding that such questioning would violate the court's pre-trial order denying Defendant's HRE Rule 412 motion to allow evidence of Complaining Witness's past sexual behavior, then struck both the question and the answer about Complaining Witness's use of the pill.

Defendant did not testify at trial. The only defense witnesses were Domingues, who testified that Complaining Witness was "mentally retarded" and "slow" and had appeared "normal" after the alleged assault supposedly took place, and Complaining Witness's half-sister, who testified that Complaining Witness had admitted that she had wanted to have sex with Defendant on the night in question.

Defendant was eventually found guilty as charged. In this timely appeal from the April 24, 1992 judgment of conviction, Defendant alleges that the family court erred when it (1) concluded that the State was not required to prove beyond a reasonable doubt that Defendant knew or should have known that the Complaining Witness was mentally defective; (2) prohibited defense counsel from cross-examining Dr. Loomis regarding information he had relied upon in rendering

his opinion that Complaining Witness was mentally defective; (3) precluded defense counsel from cross-examining Complaining Witness about her use of birth control pills to prevent pregnancy; (4) allowed Dr. Loomis, without objection by defense counsel, to express his opinion as to whether Complaining Witness was telling the truth when he evaluated her; and (5) concluded that there was sufficient evidence adduced at trial to find that Complaining Witness was mentally defective.

We agree with Defendant's first three contentions and accordingly vacate Defendant's conviction and remand for a new trial. Our disposition of this appeal renders it unnecessary to consider Defendant's remaining contentions.

## DISCUSSION

### A. The State of Mind Requirement for Commission of Sexual Assault in the Second Degree

■ Defendant argues that the family court erred as a matter of law when it concluded that "[i]t is not an element of the offense [of sexual assault in the second degree] to establish that [Defendant] knew that [Complaining Witness] was mentally defective...." We agree.

Hawai'i Revised Statutes (HRS) § 707–731(1)(b) (1993), the Penal Code provision which Defendant was charged with violating, provides as follows:

(1) A person commits the offense of sexual assault in the second degree if:

    . . . .

    (b) The person *knowingly* subjects to sexual penetration another person who is mentally defective, mentally incapacitated, or physically helpless[.]

(Emphasis added.)

HRS § 702–207 (1993) requires that "[w]hen the definition of an offense specifies the state of mind sufficient for the commission of that offense, without distinguishing among the elements thereof, the specified state of mind shall apply to all elements of the offense, unless a contrary purpose plainly appears."

Pursuant to HRS § 702–205 (1993), "[t]he elements of an offense are such (1) conduct, (2) attendant circumstances, and (3) results of conduct, as: (a) Are specified by the definition of the offense, and (b) Negative a defense (other than a defense based on the statute of limitations, lack of venue, or lack of jurisdiction)." According to the Commentary on HRS § 702–207:

This section makes it clear that the specified state of mind requirement applies to all elements of an offense. This resolves a latent ambiguity found in many penal statutes. If, for example, a statute were to make it an offense to intentionally or knowingly break and enter the dwelling of another, it is probably clear that the specified state of mind applies to entering as well as breaking, however it should also be made clear that it applies to the attendant circumstances "dwelling of another."

The phrase "unless a contrary purpose plainly appears" is intended to allow the courts to avoid an improper result when the language of a statute fails to indicate that the specified state of mind applies to less than all elements and legislative history indicates that this was intended.

Prior Hawaii [Hawai'i] law did not recognize the principle that culpability must be proven as to each element of an offense. This stems in part from the fact that the concept of "elements of an offense" had not been fully explored. A case involving a charge of contributing to the delinquency of a minor stated by way of dictum that culpability with respect to the age of the victim did not have to be proven. To the extent that this section modifies the previous law, it merely rejects those few instances where absolute penal liability was imposed indirectly.

(Footnote omitted.)

In this case, Defendant was charged with committing sexual assault in the second degree, in violation of HRS § 707–731(1)(b), which clearly specifies that a "knowing" state of mind is required for commission of the offense. The legislative history of the statute does not indicate that the legislature intended a different state of mind to apply to

any of the specific elements of the offense.[2] Therefore, the State must prove beyond a reasonable doubt that Defendant acted "knowingly" with respect to each element of the offense of sexual assault in the second degree.

■ The term "knowingly" is defined in HRS § 702–206(2) (1993) as follows:

(a) A person acts knowingly with respect to his conduct when he is aware that his conduct is of that nature.

(b) A person acts knowingly with respect to attendant circumstances when he is aware that such circumstances exist.

(c) A person acts knowingly with respect to a result of his conduct when he is aware that it is practically certain that his conduct will cause such a result.

The attendant circumstance element of the offense of sexual assault in the second degree

under HRS § 707–731(1)(b) requires that the sexual assault victim be "mentally defective, mentally incapacitated, or physically helpless[.]" In accordance with HRS § 702–207, therefore, Defendant could not be found guilty of violating HRS § 707–731(1)(b) unless the State proved beyond a reasonable doubt that (1) Complaining Witness was mentally defective, mentally incapacitated, or physically helpless; and (2) Defendant was aware that Complaining Witness was a "person who is mentally defective, mentally incapacitated, or physically helpless." [3]

B. *The Admissibility of Evidence of Complaining Witness's Prior Sexual Behavior, Including Her Use of Birth Control Pills*

1.

There was no evidence offered at trial that Complaining Witness was "mentally incapaci-

**2.** Indeed, the legislative history of the Hawai'i Penal Code suggests that automatic penal liability as to any element of a sexual offense is to be frowned upon. The Judicial Council of Hawai'i, which initially developed the tentative draft of the penal code, noted that part 7 of what is now codified as Hawai'i Revised Statutes (HRS) chapter 707 "deals only with sexual behavior which involves (1) forcible compulsion, (2) *imposition on a youth or other person incapable of giving meaningful consent*, or (3) offensive conduct." Judicial Council of Hawai'i, *Hawaii [Hawai'i] Penal Code Tentative Draft* at 67 (1969) (emphases added).

Consistent with the rationale that a youth or mentally defective person is incapable of giving consent, HRS § 702–235(2) (1993) provides that consent does not constitute a defense if "[i]t is given by a person who by reason of youth, mental disease, disorder, or defect, ... is manifestly unable or known by the defendant to be unable to make a reasonable judgment as to the nature or harmfulness of the conduct alleged[.]" The Commentary on HRS § 702–235 notes in part that

although the Code deprives the consent of its effectiveness in the situations stated in this section, the Code does not thereby impose absolute liability. Facts which deprive consent of its effectiveness negative a defense, thereby making them elements of the offense. With respect to each element the defendant must act with a culpable state of mind. Thus, for example, sexual intercourse with a female who because of her youth cannot give effective consent does not impose automatic penal liability upon the defendant. It must be proven that with respect to the attendant circumstance of the girl's age the defendant acted culpably.

This is so whether that attendant circumstance is specified in the definition of the offense or specified in a separate statute depriving her consent of effectiveness. . . .

In Hawaii [Hawai'i] case law, cases of ineffective consent are found in relation to various sex offenses, where the consent of the female is deprived of effectiveness because of her immaturity; furthermore, liability with respect to the female's age is absolute. This section of the Code, as well as the definitions of sex offenses, changes this result.

(Footnotes omitted.)

**3.** In *State v. Gonsalves*, 5 Haw.App. 659, 706 P.2d 1333 (1985), this court stated:

Sexual intercourse with a mentally defective person is characterized as rape under the principle that "consent given by one who is mentally inadequate is no consent at all." Thus many statutes, like Hawaii's [Hawai'i's], omit the requirement of force. *Sexual intercourse with a mentally defective person is all that is required for a conviction under HRS § 707–732(1).*

*Id.* at 663, 706 P.2d at 1337 (citations omitted, emphasis added). Although we did not address the state of mind requirement for culpability in *Gonsalves*, the underscored sentence has apparently been construed by some as imposing strict liability on a defendant with respect to the attendant circumstances element of sexual assault offenses. Hopefully, our conclusion in this opinion that the "knowing" state of mind applies to all elements of the offense of sexual assault in the second degree under HRS § 707–731(1)(b) will clear up any confusion that the underscored sentence may have caused.

tated" or "physically helpless" [4] for purposes of HRS § 707–731(1)(b). The focus at trial instead revolved around two key issues: (1) whether Complaining Witness was "mentally defective," a term defined in HRS § 707–700 (1993) as "a person suffering from a disease, disorder, or defect which renders the person incapable of appraising the nature of the person's conduct"; and (2) whether Defendant knew that Complaining Witness was mentally defective.

■ In *State v. Gonsalves*, this court held that to determine whether a person is mentally defective for purposes of HRS § 707–731(1)(b), the trier of fact must evaluate not only whether the complaining witness had "an understanding of the physiological elements of the sex act[,]" but also whether she understood "the moral and societal elements of the act." 5 Haw.App. at 663–64, 706 P.2d at 1337–38 (quoting *People v. Easley*, 42 N.Y.2d 50, 396 N.Y.S.2d 635, 638–39, 364 N.E.2d 1328, 1332–33 (1977)).

■ In making this determination, we held that it was important for the trier of fact to appreciate how the complaining witness regards sexual intercourse "in the framework of the societal environment and taboos to which a person will be exposed," and whether the complaining witness is able to comprehend "the moral quality of the [sex] act[.]" *Id.* at 663–64, 706 P.2d at 1337–38. Additionally, the trier of fact must assess whether the complaining witness had the "capacity to appraise the nature of the stigma, the ostracism or other non-criminal sanctions" associated with sexual intercourse outside of marriage. *Id.* at 644, 706 P.2d at 1338. Finally, the trier of fact must evaluate whether the com-

plaining witness has "the ability to appraise the possible medical consequences of the [sex] act[,]" such as incurable or even fatal sexually transmitted diseases, since such consequences are not remote, "spring directly from the act[,] and are components of the normal woman's decision to participate" in sexual intercourse. *Id.* at 644, n. 4, 706 P.2d at 1338, n. 4. "Without the ability to comprehend [the foregoing] factors, the [complaining witness] cannot be said to be capable of appraising the nature of the act. She would only see the shiny wrappings on Pandora's box,[5] and none of the contents. She would be truly, in the old-fashioned phrase, taken advantage of." *Id.* (footnote omitted; footnote added).

### 2.

■ Defendant contends that his rights of confrontation and due process under the Hawai'i and United States constitutions were violated when the trial court prohibited his defense counsel from cross-examining Dr. Loomis about Complaining Witness's past sexual behavior and Complaining Witness about her use of birth control pills. Defendant points out that since the primary issues in this case were whether Complaining Witness was mentally defective and, if so, whether Defendant had knowledge of this circumstance, he should have been allowed to question both Dr. Loomis and Complaining Witness about matters relevant to these issues.

The State, on the other hand, argues that evidence of Complaining Witness's prior sexual behavior was properly excluded by the family court pursuant to HRE Rule 412.[6] The State contends that, in view of Dr.

---

4. HRS § 707–700 (1993) defines "mentally incapacitated" as "a person rendered temporarily incapable of appraising or controlling the person's conduct owing to the influence of a substance administered to the person without the person's consent." The term "physically helpless" is defined in HRS § 707–700 as "a person who is unconscious or for any other reason physically unable to communicate unwillingness to an act."

5. According to Greek mythology, Pandora was the first woman on earth, on whom all the gods and goddesses bestowed special gifts, such as beauty, grace, and cunning. She received a box,

which contained all human ills and the only good, hope, and was ordered not to open it. However, overcome by curiosity, she opened the box, allowing all the human ills to escape and spread over the earth, only hope remaining. *See The New Webster Encyclopedia Dictionary of the English Language* 598 (1971); R. Bell, *Women of Classical Mythology: A Biographical Dictionary* 339–40 (1991); P. Grimal, *The Dictionary of Classical Mythology* 343 (A.R. Maxwell–Huslop trans. 1986).

6. See footnote 1 for relevant text of HRE Rule 412.

Loomis's opinion that Complaining Witness (1) had a poor understanding of the potential consequences of the sex act, (2) did not know how to protect herself from danger or sense people's motivations, and (3) could be easily taken advantage of as a result of her mental impairment, it was irrelevant that she may have engaged in sexual behavior numerous times before the charged incident.

We disagree with the State's position.

### 3.

At the time of Defendant's trial, HRE Rule 412 [7] excluded, as a general rule, evidence of the character and past sexual behavior of a victim of sexual assault. The Commentary to this version of the rule notes that the policy reasons for the exclusion are as follows:

> (1) that the evidence has little or no relevance on the issues of consent and credibility; (2) that the evidence tends to be misleading and time consuming; and (3) that the general admissibility of this evidence has deterred significant numbers of sexual assault victims from reporting or from prosecuting these crimes.

In *State v. Kelekolio*, 74 Haw. 479, 849 P.2d 58 (1993), the Hawai'i Supreme Court emphasized, as a threshold matter, that HRE Rule 412 was "specifically designed to protect alleged sexual assault victims from being impeached by evidence of past sexual *conduct*, as distinguished from past sexual *cognition.*" *Id.* at 521, 849 P.2d at 77 (emphases in original). Therefore, evidence of a sexual assault complainant's sexual fantasies, which was central to the defendant's case that the complainant had fantasized the alleged assault, did not fall within the prohibition of HRE Rule 412 and should have been admitted into evidence. *Id.*

7. In 1992, HRE Rule 412 was amended to clearly specify that the evidence of the past sexual behavior of an alleged victim of sexual assault was not admissible in a criminal trial "to prove the character of the victim in order to show action in conformity therewith." The 1992 Supplemental Commentary to HRE Rule 412 states that the added language
> makes clear that what is excluded is evidence of the victim's character offered to show a

▮ Similarly, in *State v. Calbero*, 71 Haw. 115, 785 P.2d 157 (1989), the supreme court held that in a sexual assault case where consent of the complaining witness was the sole issue, the defendant had a due process and confrontation right to reasonably cross-examine the complaining witness about her prior sexual conduct, in order to negate the implied establishment of an element of the crime charged, i.e., compulsion, and to bolster his defense of consent. *Id.* at 124–26, 785 P.2d at 162. The supreme court stated that "HRE 412 cannot override the constitutional rights of the accused" and "[u]nder sections 5 and 14 of Article I of our State Constitution, [a defendant's] right of confrontation includes a right to appropriate cross-examination of the complaining witness." *Id.* at 124, 785 P.2d at 161. Therefore, where the defendant proffers evidence "to negate the implied establishment of an element of the crime charged … the probative value of the testimony outweighs any interest the state has in its exclusion." *Id.* at 124–25, 785 P.2d at 161 (quoting *State v. Williams*, 21 Ohio St.3d 33, 36, 487 N.E.2d 560, 562–63 (1986)).

In the instant case, Defendant's purpose in seeking to probe into Complaining Witness's past sexual behavior was not to attack Complaining Witness's character but to explore whether Complaining Witness had a basic understanding of the physiological elements and medical consequences of sexual activity, as well as an understanding of the moral and social implications of pregnancy and sexual intercourse outside of marriage. Since the factfinder needed this information to determine whether Complaining Witness was mentally defective and whether Defendant knew that Complaining Witness was mentally defective, Defendant was entitled, under the due process and confrontation clauses, to elicit such evidence.

> propensity or inclination to behave similarly on the occasion in question. It is believed that this was the original intent of Rule 412, and that the omission of this language in the original draft was inadvertent. In any event, if the accused offers this evidence as relevant to his or her state of mind, the relevance is substantially heightened[.]

In the case of Dr. Loomis, moreover, HRE Rule 702.1(a)(3) (1993) specifically provides that an expert witness "may be cross-examined as to . . . the matter upon which the witness' [sic] opinion is based and the reasons for the witness' [sic] opinion." Since Dr. Loomis testified that his opinion that Complaining Witness was mentally defective was premised, in part, upon information about Complaining Witness's past sexual behavior, the trial court should have allowed Defendant to cross-examine Dr. Loomis about such information.

## CONCLUSION

For the foregoing reasons, we vacate the April 24, 1992 Judgment of the Family Court of the First Circuit and remand for a new trial.