DECISION AND JUDGMENT
{¶ 1} Appellant appeals his conviction for rape and gross sexual imposition rendered on a jury verdict in the Lucas County Court of Common Pleas. For the reasons that follow, we reverse. *Page 2 
 {¶ 2} In late April 2006, 13-year-old Pamela C. went to a Toledo clinic. It is the documents generated during this visit and their admissibility that are at issue in this matter. These documents were sealed by the trial court.
 {¶ 3} According to trial testimony, on May 5, 2006, while Pamela and her mother watched an Oprah program featuring a segment about adolescent sexual abuse, Pamela's mother began to question her about Pamela's own experience. Pamela said nothing at the time, but later that evening came to her mother and accused "Uncle John," appellant John Ector, of sexually molesting her over a number of years. Late that night, Pamela's mother called police.
 {¶ 4} Pamela told Toledo police that appellant began touching her in a sexually inappropriate manner when he visited her Goodale Avenue home when she was six. This behavior continued intermittently until Pamela was 11, she said. According to police, Pamela reported that when she was 12 and the family lived on "A" Street, appellant moved in. There, according to the police interview report of Pamela's statement, appellant forced intercourse with the girl twice. According to police testimony, Pamela reported that the sex became more frequent when the family moved to a North University Street home. Pamela told police her final sexual contact with appellant was between midnight and 6:30 a.m. on Christmas morning, 2005.
 {¶ 5} On July 14, 2006, a Lucas County Grand Jury handed down an indictment, charging appellant with two counts of gross sexual imposition and four counts of rape, all *Page 3 
but one rape with a victim under age 13. The same day, the state moved for an order testing appellant for sexually transmitted diseases.[1]
Appellant pled not guilty.
 {¶ 6} On October 17, 2006, the state filed a motion in limine, seeking to bar the introduction at trial of the records of Pamela's April clinic visit. Introduction of such documents, the state argued, violated Ohio's rape-shield law, R.C. 2907.02.
 {¶ 7} On March 9, 2007, appellant filed a notice of alibi, attached to which was a sign-in sheet from a local shelter, showing appellant as having signed in on the night of Christmas Eve 2005.
 {¶ 8} On March 16, 2007, the court conducted a hearing on the state's motion in limine. Following the hearing, the court granted the state's motion.
 {¶ 9} On March 19, 2007, prior to commencement of the trial, the state advised the court that it intended to nolle prosequi one count of rape, alleged to have taken place when Pamela's family lived on Elmdale St., and the count of rape that was alleged to have occurred on Christmas morning, 2005.
 {¶ 10} At trial, Pamela testified that appellant began touching her in a sexually inappropriate manner when she was six and living on Goodale. This conduct continued when the family moved to Elmdale, but did not include penetration. Pamela testified that the sexual intercourse, "five or — to seven times," all occurred on "A" Street. After the family moved from "A" Street, although there was further touching, there was no sexual intercourse, Pamela testified. "He * * * never raped me on [North] University." *Page 4 
 {¶ 11} Appellant cross-examined Pamela about the discrepancy between her testimony and what she first reported to police. At side bar, he sought again to introduce the clinic documents, arguing that the purpose of their introduction was not to explore Pamela's sexual history, but to provide a motive for her to fabricate a story implicating appellant. According to appellant, Pamela attempted to conceal her visit to the clinic by giving an aunt's address and a grandmother's telephone for contact. If the clinic documents were introduced, appellant maintained, they would show that Pamela had motive to fabricate a story and permit him to argue to the jury that he was merely a scapegoat. The trial court again refused admission of the clinic documents.
 {¶ 12} The matter was submitted to the jury, which found appellant guilty of all remaining charges. The trial court accepted the verdict and sentenced appellant to a total of 26 years imprisonment.
 {¶ 13} From this judgment, appellant now brings this appeal. Appellant sets forth the following single assignment of error:
 {¶ 14} "Application of the rape shield law resulted in a denial of John Ector's constitutional rights to confront and cross-examine witnesses, his right to present a defense, and his right to a fair trial and due process of law, in violation of the U.S. Constitution's Fifth,Sixth and Fourteenth Amendments and Article I, Section 10 and 16 of the Ohio Constitution."
 {¶ 15} The sole issue before us is whether the trial court properly excluded the clinic reports from evidence, pursuant to Ohio's rape-shield law. *Page 5 
 {¶ 16} R.C. 2907.02(D) provides:
 {¶ 17} "(D) Evidence of specific instances of the victim's sexual activity, opinion evidence of the victim's sexual activity, and reputation evidence of the victim's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value."
 {¶ 18} "Several legitimate state interests are advanced by the shield law. First, by guarding the complainant's sexual privacy and protecting her from undue harassment, the law discourages the tendency in rape cases to try the victim rather than the defendant. In line with this, the law may encourage the reporting of rape, thus aiding crime prevention. Finally, by excluding evidence that is unduly inflammatory and prejudicial, while being only marginally probative, the statute is intended to aid in the truth-finding process." State v. Gardner (1979),59 Ohio St.2d 14, 17. Facially, then, the statute is rationally related to a legitimate state interest.
 {¶ 19} Nevertheless, there are some circumstances under which evidence rendered inadmissible by the rape-shield law should be admitted, "* * * in furtherance of the defendant's constitutional rights." State v.Williams (1986), 21 Ohio St.3d 33, 35. Specifically, the rape-shield law must yield when it infringes on a defendant's Sixth Amendment right to confront the witnesses against him or her. Id. *Page 6 
 {¶ 20} Confrontation means more than being allowed to physically confront a witness. The cases construing the clause hold that the primary interest secured by the clause is that of meaningful cross-examination. Davis v. Alaska (1974), 415 U.S. 308, 317. The rights to confront, cross-examine and call witnesses in one's own behalf are deemed essential to due process. State v. Gardner, supra, at 17, citingChambers v. Mississippi (1973), 410 U.S. 284, 294-295.
 {¶ 21} In Gardner, Ohio adopted the balancing test articulated inDavis v. Alaska, supra. To determine whether the rape-shield law is constitutionally applied in a specific instance the court must, "* * * balance the state interest which the statute is designed to protect against the probative value of the excluded evidence." Id. Evidence of sexual activity offered merely to impeach the credibility of the witness is not material to a fact at issue in the case and must be excluded.Gardner at 18-19; State v. Ferguson (1986), 5 Ohio St.3d 160, paragraph two of the syllabus.
 {¶ 22} Alternatively, evidence which is probative of a material issue should not be excluded. Davis concerned a juvenile shield law. 17-year-old Richard Green was a key witness against Davis in a burglary trial. Green's testimony alone put Davis prying open a safe stolen earlier. Prior to trial, the prosecution invoked Alaska's juvenile shield law to prevent inquiry into the fact that Green himself had been twice adjudicated delinquent for burglary and was, at the time of the trial, on probation for these offenses. Davis' counsel unsuccessfully argued that Green's delinquency adjudication was not being offered for general impeachment, but to show — or at least argue — that Green had a motive to provide *Page 7 
a hasty or faulty identification to shift suspicion from himself or that he acted under undue pressure from police for fear of probation revocation.
 {¶ 23} The Alaska Supreme Court affirmed Davis' conviction. The Supreme Court of the United States reversed, stating "[w]e cannot speculate as to whether the jury, as sole judge of the credibility of a witness, would have accepted this line of reasoning had counsel been permitted to fully present it. But we do conclude that the jurors were entitled to have the benefit of the defense theory before them so that they could make an informed judgment as to the weight to place on Green's testimony which provided `a crucial link in the proof * * * of petitioner's act.'" Davis at 317 (citation omitted).
 {¶ 24} In State v. Williams, supra, the defendant's accuser testified that she would never have consented to sex with him because she was gay and would not voluntarily have sexual relations with a man. In his defense, Williams attempted to introduce testimony of another man that had prior sexual relations with Williams' accuser. The court barred this testimony pursuant to the rape-shield law. The court of appeals reversed and ordered introduction of the testimony. The Ohio Supreme Court affirmed, distinguishing the case from Gardner and Ferguson and finding it more akin to Davis. "As in Davis, this evidence is submitted for more than mere impeachment of a witness' credibility. The victim's credibility is indeed being impeached; however, the proffered evidence has a more important purpose, which is to negate the implied establishment of an element of the crime charged. For this reason, the probative value of the testimony outweighs any interest the state has in exclusion." Williams at 36. *Page 8 
 {¶ 25} The present matter is more akin to Davis than the other cases. Pamela C. is the only witness of appellant's alleged culpability. There is no forensic evidence. There is no other witness to the acts Pamela C. attributes to appellant. As with Green in the Davis case, it is highly relevant if the sole principal witness against appellant had a motive to fabricate an accusation.
 {¶ 26} As defense counsel noted at the motion hearing, at the clinic Pamela C. did not use her mother's address or phone number as contact information. It is certainly arguable that this indicated a desire to conceal her visit and its purpose from her mother. At least one of Pamela's responses on the clinic admission questionnaire is in direct conflict with her statements to police and her trial testimony on an issue that is an element of each of the offenses charged.
 {¶ 27} We have carefully reviewed the disputed documents. The material contained in the evidence excluded presents facts by which it arguably may be shown that Pamela C, like Green, had a motive to divert attention from her own acts to that of another.[2] As in Davis, we cannot speculate as to whether the trier of fact would accept this theory, but it is highly relevant and goes to a material issue critical to the state's proof. For this reason, we conclude that the probative value of the excluded evidence outweighs the state's interest in its exclusion. Accordingly, appellant's sole assignment of error is found well-taken. *Page 9 
 {¶ 28} On consideration whereof, the judgment of the Lucas County Court of Common Pleas in reversed. This matter is remanded to said court for further proceedings consistent with this decision. Appellee is ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT REVERSED.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4.
Peter M. Handwork, J., Arlene Singer, J., CONCUR.
Mark L. Pietrykowski, J., concurs, in part, and dissents, in part.
[1] The court ordered the testing on September 7, 2006. The results of this test were not introduced into evidence or otherwise made a part of the record.
[2] And, as in Williams, although this material tends to impeach Pamela C.'s testimony, this function is ancillary to its principal purpose to negate an element of the offense. Thus, Evid. R. 608(B) does not demand its exclusion. Williams at 36-37.