JOURNAL ENTRY AND OPINION
Defendant-appellant Michael Bugg appeals from his convictions following a jury trial on three counts of rape of a child under the age of thirteen with force (R.C. 2907.02); two counts of gross sexual imposition (R.C. 2907.05); and four counts of disseminating matter harmful to juveniles (R.C. 2907.31). Defendant contends that the trial court improperly excluded relevant evidence of the victim's prior sexual activity and erred in not holding an in camera hearing respecting same; that his counsel was ineffective in failing to challenge certain members of the jury panel; that the State failed to prove the force element of the rape crimes beyond a reasonable doubt; and the verdict was against the manifest weight of the evidence. We find no merit to these contentions and affirm.
The victim, eleven-year-old Elizabeth Caudill, testified for the State to the sexual activities that occurred between her and defendant. She testified that defendant began touching her "in the wrong spot" about two years earlier when she was living with her mother and the defendant on West 106th Street. The abuse continued after her brother Mikey was born and the family moved to Walton Avenue.
Elizabeth described to the jury the numerous times that defendant sexually molested her, describing in graphic detail a wide range of repulsive activities including oral and anal penetration, fellatio and cunnilingus, as well as masturbation. According to Elizabeth, defendant also involved Elizabeth's cousin, Brandy Sabala, in their sexual activities.
Elizabeth testified that defendant showed her "nudity or sex movies" while defendant masturbated and had sex with her. Elizabeth described the color of the boxes the videos were in as well as several scenes therein. The eleven year old also described the obscenities that defendant would say to her or tell her to say to him while they were having sex. Elizabeth testified that after she told her aunt that defendant had touched her and Brandy, defendant promised her that he would buy her a dog if she went back and told her aunt that she lied about the touching. Defendant also threatened her while having sex with her that "he would kill me if I ever told." All of these incidents occurred while her mother, Tracy Bugg, was sleeping or at work.
Elizabeth's cousin, Brandy Sabala, (age 11) also testified to defendant touching her and Elizabeth in a way that she did not like. Brandy testified that she and Elizabeth were also told to touch each other in the private spots where defendant had touched them. This happened "[b]ecause Uncle Mike said." She further testified that when defendant touched her private parts he would touch them under her clothes.
Dawn Sabala, Brandy's mother and Elizabeth's aunt, testified that she remembered Elizabeth telling her that defendant was touching both girls. Dawn then immediately confronted defendant who denied any wrongdoing and then took the girls upstairs to Elizabeth's room to talk to them alone. When the girls came back downstairs, they recanted their stories and told Dawn that they were lying.
Tracy Bugg testified that she remembered when Elizabeth told her that the defendant had touched her. She later dismissed these claims after Elizabeth came back and told her that she was lying. Tracy testified that on February 6, 1998, Elizabeth woke her from her sleep on the couch and again told her what that he had been doing to her. "She was very graphic about everything." Tracy then took Elizabeth to the kitchen to confront defendant and he denied it. She kept questioning both of them but Elizabeth stuck to her story and defendant stuck to his. Tracy told them that she would call the police unless whoever was lying came out and told the truth. About a week later, they all went to the Justice Center where Elizabeth was interviewed.
Tracy further testified that Elizabeth's demeanor was very different around defendant. When the defendant was in the house, Elizabeth "kept herself very isolated from everything" and would sit on the couch and watch Nickelodeon almost all the time.
However, when defendant was not in the house, she "was having fun, laughing more openly, outside playing with her friends, having water fights. I mean, all the things kids her age should be out there doing."
Det. Carl Lessman of the Cleveland Police Department's Sex Crimes and Child Abuse Unit testified that on February 12, 1998, he interviewed Elizabeth when she, her mother, her little brother and the defendant came to the police station. Det. Lessman took Elizabeth to an interview room and asked her privately what had happened. Elizabeth described what defendant had done to her and the detective took a written statement from her. Det. Lessman testified that her description was "very graphic" for an eleven year old and that she was "very up front." He was surprised by her mature and/or slang terminology for sexual body parts. Later that day, he and Det. Jimmie Chappel placed defendant under arrest in connection with the rape of Elizabeth. On February 16, 1998, Det. Lessman drove to defendant's home on Walton Avenue where Tracy Bugg turned over four adult video tapes to him. He testified that he viewed the tapes and they contained scenes very similar to the ones that Elizabeth had previously described in her interview.
Dr. Mark Feingold, Director of the Alpha Clinic at Metro Health Medical Center, testified that he examined Elizabeth on February 13, 1998. The Alpha Clinic is a clinic for the evaluation of children who may have been sexually abused. During the examination he noticed three very deep notches in the circumference of Elizabeth's hymen. His opinion, to a reasonable degree of medical certainty, was that the cause of these notches was very likely the result of sexual trauma. He further testified that these notches "are very consistent with" penile and/or digital penetration.
Following the jury verdicts, a sexually violent predator specification hearing was held before the trial court and defendant was found to be a sexually violent predator by the trial court. Defendant does not appeal that finding.
Defendant's assignments of error will be addressed in the order presented and together where appropriate to the discussion.
 I. THE TRIAL COURT IMPROPERLY EXCLUDED EVIDENCE WHICH WAS PROBATIVE TO THE JURY'S DETERMINATION OF THE APPELLANT'S GUILT BEYOND A REASONABLE DOUBT.
 IV. THE TRIAL COURT FAILED TO HOLD AN IN CAMERA HEARING REGARDING PAST SEXUAL ACTIVITY EVIDENCE OF THE VICTIM.
These two assignments of error will be treated together because the issues presented are related. Defendant's Assignment of Error I claims that the trial court erred in excluding evidence that the child victim had previously participated in sexual acts which could have resulted in injury to her hymen. In Assignment of Error IV, defendant contends the trial court erred in not holding an in camera hearing on the issue.
The rape shield law, R.C. 2907.02(D), states as follows:
 Evidence of specific instances of the victim's sexual activity * * * shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value.
"The Ohio Supreme Court has determined that where contested evidence of the victim's sexual activity is proffered solely to impeach a victim's credibility, its admission is prohibited by the rape shield law." State v. Hart (1996), 112 Ohio App.3d 327,332, citing State v. Ferguson (1983), 5 Ohio St.3d 160, 165.
The Supreme Court in State v. Williams (1986), 21 Ohio St.3d 33,34, quoting State v. Gardner (1979), 59 Ohio St.2d 14, outlined the concerns behind the rape shield law:
 "* * * First, by guarding the complainant's sexual privacy and protecting her from undue harassment, the law discourages the tendency in rape cases to try the victim rather than the defendant. In line with this, the law may encourage the reporting of rape, thus aiding crime prevention. Finally, by excluding evidence that is unduly inflammatory and prejudicial, while being only marginally probative, the statute is intended to aid in the truth-finding process."
Defense counsel, during cross examination of Dr. Feingold, repeatedly attempted to question him about a prior incident in which the victim was caught in "sexual play" with a four-year-old boy when the victim was also four or five years old. However, there is no showing in the record that this was anything more than normal child's play, nor was there any basis for a belief that this brief incident could have caused the significant injuries present in Elizabeth's hymen. Moreover, whether this prior incident actually occurred would be only marginally probative of the issue of whether the defendant repeatedly raped Elizabeth while he was living with her family.
Furthermore, "[i]t is within the trial court's sound discretion to determine the relevancy of evidence and to apply the rape shield law to best meet the purpose behind the statute." State v.Hood (June 18, 1998), Cuyahoga App. No. 72372, unreported, quoting State v. Miller (1989), 63 Ohio App.3d 479, 483. Therefore, the defendant must show that the trial court abused its discretion when it excluded evidence of the victim's prior sexual acts. An abuse of discretion connotes more than an error of law or judgment, it implies that the trial court's attitude was unreasonable, arbitrary or unconscionable. State v. Adams
(1980), 62 Ohio St.2d 151. 157-158.
In the instant case, we find that the trial court used sound discretion in preventing information that was in direct contravention of the rape shield law. The victim's prior sexual play with a boy when she was only four or five years old was unduly inflammatory and had little or no probative value. Accordingly, the trial court's decision to exclude this evidence was clearly not unreasonable or unconscionable so as to constitute an abuse of discretion.
Defendant also asserts in his Assignment of Error IV that the trial court erred by failing to follow R.C. 2907.02(E) in providing an in camera hearing for the rape shield evidence. However, R.C. 2907.02(E) requires defense counsel to present such issues to the court prior to trial. This section specifically states:
 Prior to taking testimony or receiving evidence of any sexual activity of the victim or the defendant in a proceeding under this section, the court shall resolve the admissibility of the proposed evidence in a hearing in chambers, which shall be held at or before preliminary hearing and not less than three days before trial, or for good cause shown during the trial.
This section requires that the admissibility of rape shield evidence be determined by the court following an in camera
hearing. However, these requirements may be waived if not asserted to the trial court prior to trial, or during trial with good cause shown. State v. Acre (1983), 6 Ohio St.3d 140, paragraph four of the syllabus. In Acre, the Court also found that trial courts do not have a duty to hold such a hearingsua sponte. Id. at 144.
In the instant case, defendant never requested such a hearing prior to trial. Accordingly, defendant waived his right to an incamera hearing unless he could establish good cause. See State v.Rodrigues (Mar. 26, 1996), Franklin App. No. 95APA06-683, unreported. Pursuant to our above finding that the prejudicial nature of Elizabeth's prior sexual play outweighed its probative value, defendant cannot establish the requisite good cause to request an in camera hearing during trial.
Defendant asserts at page 267 of the transcript, "defense counsel placed on the record a lengthy statement regarding the evidence outside the presence of the jury * * *" However, there is no evidence of this statement or request in the record on that page. Rather, on page 261 of the transcript, there is a mention of a side bar outside the hearing of the jury, but nothing was recorded. On page 287 of the transcript, after Dr. Feingold, from whom the rape shield evidence was to be elicited, stepped down and Tracy Bugg had testified and stepped down, defense counsel did place on the record his reasoning for requesting that the rape shield evidence be admitted. However, defense counsel never requested an in camera hearing nor made any statement to show good cause for admitting the evidence despite the clear violation of R.C. 2907.02(E).
Therefore, the court did not abuse its discretion by denying the admission of such evidence without holding an in camera
hearing; the evidence was not properly presented to the court before trial; no good cause was shown as to why it should be considered during trial; and the evidence was inadmissible under R.C. 2907.02(D).
Defendant's Assignments of Error I and IV are overruled.
 II. THE APPELLANT WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.
In his second assignment of error, defendant claims that he did not receive effective assistance of counsel because his counsel never attempted to have any juror removed for cause nor did counsel exercise any peremptory challenges. This assertion is without merit.
This Court described the standard of review to make a showing of ineffective assistance of counsel in Lakewood v. Town (1995)106 Ohio App.3d 521, 525-26:
 The standard of review for ineffective assistance of counsel requires a two-part test and is set forth in Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. See, also, State v. Bradley
(1989), 42 Ohio St.3d 136, 538 N.E.2d 373."[T]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland
at 687-688, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. The defendant must also prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698.
Furthermore, when determining whether counsel's performance was deficient "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'" Strickland v.Washington (1984), 466 U.S. 668, 689.
Defendant asserts that counsel was ineffective in failing to dismiss jurors King, Gaines, Garfield, Wilcox and Morvin. Defendant correctly states that juror King was a victim of a car jacking by gunpoint. However, King expressed to the court that this incident occurred "a long time ago" and that he could be fair to the defense. (Tr. at 38). Juror Gaines, who had an aunt that was stabbed to death, expressed to the court that nothing from that experience made her feel that she could not be fair to the defense. (Tr. at 21). Juror Garfield also expressed to the court that she could be fair to the defense even though she had a nephew who was robbed and shot in the leg. (Tr. at 101). Juror Morvin informed the court that her father was a police chief and her uncle was a police sergeant but expressed to the court that she "absolutely" could be fair to the defense. (Tr. at 28).
Defendant also asserts that counsel should have used a challenge on juror Wilcox after he informed the court that he would change his vote against his own belief depending on what the rest of the jury came up with. However, Wilcox later expressed to the court that if he felt strongly about his position, he would not just agree and change his vote. (Tr. at 67).
Decisions regarding the exercise of peremptory challenges are part of trial strategy. All of these jurors clearly expressed to the court they would not be affected by their previous experiences and that they could be fair to the defense. In view of these statements, the record does not support the conclusion that counsel's failure to exercise peremptory challenges fell below an objective standard of reasonableness. Defendant has also failed to show that the outcome of his trial would have been different had his counsel exercised his peremptory challenges on these jurors. Accordingly, counsel's actions did not constitute ineffective assistance. See State v. Goodwin (1999),84 Ohio St.3d 331, 341.
Defendant's Assignment of Error II is overruled.
 III. THE STATE FAILED TO PROVE THE ELEMENT OF FORCE BEYOND A REASONABLE DOUBT.
 V. THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
In these assignments of error, defendant argues that the State failed to meet its burden of proving rape of a child under the age of thirteen because the State failed to demonstrate "what inducements (i.e., force) were made by the defendant to the victim before the sexual activities." The State contends it was under no such obligation to show that explicit threats or displays of force were made in this case because the defendant held a position of authority over eleven-year-old Elizabeth.
The standard of review we must observe in passing on sufficiency of the evidence and manifest weight of the evidence issues were set forth by the Supreme Court of Ohio as follows inState v. Thompkins (1997), 78 Ohio St.3d 380, 386-87:
 The state asserts that sufficiency of the evidence and weight of the evidence are synonymous legal concepts. They are not. The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different.
 With respect to sufficiency of the evidence, "`sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." Black's Law Dictionary (6 Ed. 1990) 1433. See, also, Crim.R. 29(A) (motion for judgment of acquittal can be granted by the trial court if the evidence is insufficient to sustain a conviction). In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict, is a question of law. State v. Robinson (1955), 162 Ohio St. 486, 55 0.0. 388, 124 N.E.2d 148. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. Tibbs v. Florida
(1982), 457 U.S. 31, 45, 102 S.Ct. 2211, 2220, 72 L.Ed.2d 652, 663, citing Jackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.
 Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. Robinson, supra, 162 Ohio St. at 487, 55 0.0. at 388-389, 124 N.E.2d at 149. Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis added.) Black's supra, at 1594.
 When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "`thirteenth juror'" and disagrees with the factfinder's resolution of the conflicting testimony. Tibbs, 457 U.S. at 42, 102 S.Ct. at 2218. 72 L.Ed.2d at 661. See, also, State v. Martin
(1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720-721 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.")
Defendant was convicted of raping his eleven-year-old stepdaughter by force in violation of R.C. 2907.02. "Force" is defined in R.C. 2907.01(A) as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." The amount of force necessary to commit rape "depends upon the age, size, strength of the parties and their relation to each other." State v. Eskridge (1988), 38 Ohio St.3d 56, paragraph one of the syllabus. In Eskridge, the Supreme Court recognized:
 "* * * Sexual activity between a parent and a minor child is not comparable to sexual activity between two adults with a history of consensual intercourse. The youth and vulnerability of children, coupled with the power inherent in a parent's position of authority, creates a unique situation of dominance and control in which explicit threats and displays of force are not necessary to effect the abuser's purpose."
Id. at 59, quoting State v. Etheridge (1987), 319 N.C. 34, 47. The Court in State v. Schaim (1992), 65 Ohio St.3d 51, 55, concluded that "[b]ecause of the child's dependence on his or her parents, a child of tender years has no real power to resist his or her parent's command, and every command contains an implicit threat of punishment for failure to obey."
In the instant case, we find that defendant, as the victim's step-father, unmistakably occupied a position of authority over Elizabeth. Therefore, actual physical threats of force were not necessary to demonstrate the force element of rape.
Regardless of the necessity of actual force, we find that the evidence clearly established the requisite element of force to support defendant's rape conviction. Elizabeth testified that defendant made her perform certain perverted acts. (Tr. at 132) Elizabeth further testified that defendant threatened her while having sex with her that "he would kill me if I ever told." (Tr. at 140). Furthermore, Brandy, Elizabeth's cousin, testified that she and Elizabeth were made to touch each other "[b]ecause Uncle Mike said." (Tr. at 212). Accordingly, there was sufficient evidence in the record to establish beyond a reasonable doubt that defendant raped Elizabeth by force.
Defendant also asserts that his rape conviction was against the manifest weight of the evidence. We disagree.
First, defendant's brief fails to present any text or authorities in support of this assertion. Under App. R. 16(A)(7), an appellant's brief must include:
 An argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies. The argument may be preceded by a summary.
Because defendant merely sets forth his assignment of error in his brief without any accompanying argument or authorities, we are not obligated to address this assignment. Nevertheless, the State asserts that the defendant's convictions are not against the manifest weight of the evidence.
We find that there was substantial probative evidence in the record to find defendant guilty beyond a reasonable doubt of rape, gross sexual imposition and dissemination of harmful materials. Elizabeth testified about defendant's vaginal and oral penetration of her, defendant's sexual touching of her, and defendant's showing of the obscene videos to her. Brandy testified that defendant touched her private parts under her clothes and told her and Elizabeth to touch each other in their private spots. Furthermore, Dr. Feingold testified that during an examination of Elizabeth, he noticed three very deep notches in her hymen which he concluded were "very likely" the result of sexual trauma.
Based on this evidence, we have no reason to find that the jury clearly lost its way or that defendant's convictions created a manifest miscarriage of justice. Defendant's convictions clearly were not against the manifest weight of the evidence.
Defendant's Assignments of Error III and V are overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
LEO M. SPELLACY, J. CONCURS.
 TIMOTHY E. McMONAGLE, J., CONCURS IN JUDGMENT ONLY.
 ______________________________ JAMES M. PORTER ADMINISTRATIVE JUDGE