OPINION
Plaintiff-appellant, Thomas Bonasera, Administrator of the Estate of Cecil McDaniel, appeals from the March 31, 1999 judgment of the Franklin County Court of Common Pleas in favor of defendant-appellee, Richard Turiel, and the decision of July 20, 1999, overruling appellant's motion for a new trial. The case arose out of a house fire that took place at 1025 East 17th Avenue, Columbus, Ohio, on December 4, 1994. Appellee, Richard Turiel, owned the property. Plaintiff's decedent, Cecil McDaniel, a resident at the property, suffered serious burns and died in the fire.
Appellee had purchased the duplex at 1023 and 1025 East 17th Avenue in 1983 intending to use it as rental property. On May 15, 1984, appellee entered into a written lease with Marjorie Clegg, Robert Sherrod, and Vicki Dukes. Mrs. Clegg lived continuously in the property from 1984 until the fire in December of 1994.
Three-to-four years prior to the fire, Mrs. Clegg rented a room to decedent, Cecil McDaniel, for $135 per month. Mrs. Clegg testified by way of deposition that appellant knew that Mr. McDaniel lived at the property, knew that Mr. McDaniel had his own room, knew that Mr. McDaniel's room was upstairs on the second floor, and knew that Mr. McDaniel was paying rent for the room. (Tr. 206.) Mrs. Clegg did not specifically tell appellee that she was renting a room to Mr. McDaniel, but she did state that appellee visited the property "maybe once a week. Maybe once a week or maybe two or three times a month. He wasn't there every day." (Tr. 203.) She later testified, "he [appellee] saw him [McDaniel] there, so I assumed that he knew he lived there." (Tr. 239.) Appellee, however, testified that he did not know that Mrs. Clegg was renting a room to Mr. McDaniel. (Tr. 482-483.)
Mrs. Clegg also testified that she had rented a room to Jerry Joyce before Mr. McDaniel began renting. Checks issued by the state of Ohio to "Jerry Joyce, 1025 E. 17th Ave., Columbus, OH, 43211-2440" were found in the rental file for the property. Appellee's property manager, Donald Acquista, testified that those checks were received in payment of rent. Appellee also denied knowing that Mr. Joyce was living at the property.
Appellee testified that, at the time he rented the premises to Mrs. Clegg, he had already installed one smoke detector and, that later in 1984, he installed another smoke detector. Appellee also testified that he installed smoke detectors in the other half of the duplex (1023 East 17th Avenue) in 1983 and 1984 when he rented the unit to Clara Martin. After the installation, appellee paid no further attention to the smoke detectors.
In her deposition, Mrs. Clegg testified that there were smoke detectors on the first and second floor, that they were present when she began living there, and that she did not take them down, change the batteries, or see anybody do anything with them. She had never heard them go off. At no time did Mrs. Clegg ever complain or advise appellee that there were any problems with the smoke detectors at 1025 East 17th Avenue. (Tr. 196-197, 230-231.)
David A. Thompson, an arson investigator with the Columbus Fire Department, testified that the fire originated on the first floor in the living room sofa and was started by a child playing with a lighter. Mr. Thompson searched through the debris on the first and second floors for any remains of smoke detectors, such as mounting brackets or batteries, and also examined the walls and ceilings for evidence as to whether smoke detectors had ever been installed. He found no evidence of smoke detectors in place on the first or second floors of the property. Mr. Thompson testified that he asked Mrs. Clegg if there were any smoke detectors on the property. The trial court, however, sustained an objection to Mrs. Clegg's answer on the basis of hearsay. If permitted to testify, Mr. Thompson would have testified that Mrs. Clegg told him that there were no smoke detectors on the premises. Mr. Thompson did not search for evidence of smoke detectors on the 1023 East 17th Avenue side of the duplex.
After the fire, appellee looked for evidence of smoke detectors. He found evidence of one smoke detector at 1023 East 17th Avenue, but no evidence of smoke detectors at 1025 East 17th Avenue.
The Franklin County Coroner's office performed an autopsy on Mr. McDaniel. The cause of death was determined to be the result of "smoke inhalation and thermal burns." At the time of death, Mr. McDaniel had blood alcohol level of .04 percent which did not impair his ability to escape the fire. Dr. Donald Hoffman, a certified fire investigator with a Ph.D. in chemical engineering, testified that, if operable smoke detectors had been in place, Mr. McDaniel would have had ample time to safely evacuate the residence.
The case proceeded to trial on the survivorship claim of Mr. McDaniel. Appellant alleged that appellee was negligent for failing to install smoke detectors at 1025 East 17th Avenue. The primary issues before the jury were whether appellee had failed to install smoke detectors and whether that failure was the proximate cause of appellant's damages.
The jury returned a verdict in favor of appellee. The trial court entered judgment for appellee, and overruled appellant's motion for a new trial. Appellant filed a timely appeal, assigning as error the following:
Assignment of Error No. 1
 THE TRIAL COURT PREJUDICIALLY ERRED IN LIMITING THE SCOPE OF CROSS-EXAMINATION OF DEFENDANT TURIEL AND IN REFUSING TO PERMIT APPELLANT TO IMPEACH HIM.
Assignment of Error No. 2
 THE TRIAL COURT PREJUDICIALLY ERRED IN QUASHING THE SUBPOENA FOR THE LOFTON PROPERTY AND/OR REFUSING TO ORDER THAT SAID FILE BE PRODUCED BY COUNSEL.
Assignment of Error No. 3
 THE TRIAL COURT PREJUDICIALLY ERRED IN EXCLUDING MS. CLEGG'S STATEMENT TO INVESTIGATOR THOMPSON THAT THERE WERE NO SMOKE DETECTORS AT THE PREMISES.
Assignment of Error No. 4
 THE TRIAL COURT PREJUDICIALLY ERRED IN PERMITTING IRRELEVANT CHARACTER EVIDENCE OF THE DECEDENT'S ALLEGED DRINKING "HABITS."
Assignment of Error No. 5
 THE TRIAL COURT PREJUDICIALLY ERRED IN FAILING TO DISCHARGE ITS DUTY TO CONSTRUE AND INTERPRET THE ALLEGED LEASE AGREEMENT.
Assignment of Error No. 6
 THE TRIAL COURT PREJUDICIALLY ERRED IN PERMITTING TURIEL TO TESTIFY THAT CLEGG'S ALLEGED SUB-LEASE TO THE DECEDENT VIOLATED THE LEASE AGREEMENT AND FURTHER ERRED IN PUBLISHING THE LEASE TO THE JURY.
Assignment of Error No. 7
 THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED IN OVERRULING APPELLANT'S OBJECTION TO THE IMPROPER AND PREJUDICIAL CLOSING ARGUMENT OF APPELLEE'S COUNSEL.
Assignment of Error No. 8
 THE TRIAL COURT PREJUDICIALLY ERRED IN ITS JURY INSTRUCTIONS TO THE JURY BY REFUSING TO INSTRUCT ON RELEVANT PORTIONS OF THE COLUMBUS CITY CODE RELATING TO DWELLING UNITS SHARING A BATH.
Assignment of Error No. 9
 THE TRIAL COURT PREJUDICIALLY ERRED IN ITS JURY INSTRUCTIONS BY REFUSING APPELLATE'S [sic] INSTRUCTION RELATING TO THE DUTY OF AN OWNER TO COMPLY WITH THE LAW.
Assignment of Error No. 10
 THE TRIAL COURT PREJUDICIALLY ERRED IN ITS JURY INSTRUCTIONS BY REFUSING TO GIVE APPELLANT'S INSTRUCTIONS RELATING TO COMMON LAW NEGLIGENCE 
MINIMUM STANDARD OF CONDUCT.
The Ohio Supreme Court has held that landlords are subject to tort liability for violations of R.C. 5321.04. Under R.C. 5321.04(A)(1), landlords are charged with a duty to "[c]omply with the requirements of all applicable building, housing, health, and safety codes that materially affect health and safety[.]" The city of Columbus has enacted municipal ordinances governing the use of smoke detectors in residential properties. Under Columbus Housing Code 4529.09(C), smoke detectors must be installed on each story of a dwelling unit. Upon a change of occupancy, landlords are required to install all smoke detectors required by R.C. Chapter 4529 and to inspect existing smoke detectors prior to the new tenant taking occupancy. Columbus Housing Code 4529.13. A landlord's violation of these duties constitutes negligence perse, but a landlord will be excused from liability if he neither knew nor should have known of the factual circumstances that caused the violation. Sikora v. Wenzel (2000), 88 Ohio St.3d 493, syllabus.
In his first assignment of error, appellant argues that the trial court erred by refusing to permit appellant to cross-examine appellee as to whether or not it was appellee's policy to install smoke detectors in all of his rental properties. By way of proffer, appellee had testified at his deposition that he placed smoke detectors in all of his properties prior to the time that his tenants moved in. (Tr. 265-266, 397.) Appellant sought to elicit this same testimony at trial to lay a foundation to later impeach appellee with the testimony of a Columbus firefighter, Charles Lofton, who testified by deposition that there were no smoke detectors at the residence he rented from appellee at the time he moved in. (Tr. 397-398.)
Appellant objected to the question of appellee's policy with respect to smoke detectors on the basis that the testimony constituted other acts that were irrelevant to appellee's duties with regard to the property at issue in this case. The trial court sustained the objection.
Had appellee, instead of appellant, sought to introduce this testimony it would have been admissible pursuant to Evid.R. 406, which provides:
 Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.
However, the scope of cross-examination and the admissibility of evidence during cross-examination are matters that rest in the sound discretion of the trial court. O'Brien v. Angley (1980),63 Ohio St.2d 159, 163. Reviewing courts should be slow to interfere with a trial court's determination concerning the admissibility of evidence unless the trial court has abused its discretion and the party has been materially prejudiced thereby. Reinoehl v. TrinityUniversal Ins. Co. (1998), 130 Ohio App.3d 186, 194.
Here, appellant's stated reason for eliciting appellee's testimony about his other rental units was not to show that appellant acted in conformity with his habit, but to impeach appellee's credibility with a specific instance of conduct that was at variance with the stated policy. "Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of crime as provided in Evid.R. 609, may not be proved by extrinsic evidence." Evid.R. 608(B). Thus, sustaining an objection to appellee's policy with respect to his other rental units was not prejudicial to appellant as Lofton's testimony was inadmissible pursuant to Evid.R. 609. Therefore, it was not an abuse of discretion for the trial court to limit the scope of cross-examination. The first assignment of error is not well-taken.
In his second assignment of error, appellant argues that the trial court erred in not ordering appellee to produce for trial the rental file of the property rented to Columbus firefighter Charles Lofton. The trial court ruled that what appellee did with respect to smoke detectors in his other rental properties was not relevant. (Tr. 450.) Appellant argues that the records may have been relevant to impeach the credibility of appellee or his property manager if the records show that smoke detectors were placed in the property after Lofton moved in or after the subject fire. We disagree.
As discussed above, the trial court precluded the introduction of evidence related to other rental units owned by appellee, and limited the scope of questioning to the subject premises. This was an appropriate exercise of discretion, as specific instances of conduct, relating only to the credibility of a witness, may not be established by extrinsic evidence. State v.Leuin (1984), 11 Ohio St.3d 172, 174. The second assignment of error is not well-taken.
In his third assignment of error, appellant argues the trial court erred in excluding the out-of-court statement Mrs. Clegg made to Investigator Thompson that there were no smoke detectors at the premises. Marjorie Clegg did not testify in person at the trial. Rather, her deposition was read to the jury. Appellant argues, as he did at trial, that Marjorie Clegg's statement was admissible as an exception to the hearsay rule as an admission against interest pursuant to Evid.R. 804(B)(3). Appellant contends that Marjorie Clegg, who was renting a room to Mr. McDaniel, had the same obligation to install smoke detectors, as did appellee. Thus, according to appellant, when Clegg told Investigator Thompson that there were no smoke detectors present, she exposed herself to civil liability.
Evid.R. 804(B)(3) provides an exception to the prohibition against hearsay evidence where the declarant is unavailable and the statement was "at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability * * * that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true." The rule is based on the premise that people do not fabricate things that would be harmful to them. Redman v. WatchTower Bible and Tract Society of Pennsylvania (Aug. 14, 1992), Wood App. No. 91WD071, unreported.
The trial court found that the statement at the time of its making did not so far tend to subject Clegg to civil liability that a reasonable person in Clegg's position would not have made the statement unless Clegg believed it to be true. As the trial court stated in overruling appellant's motion for a new trial, "[t]here is no reason to conclude that when the alleged statement was made, Mrs. Clegg effectively thought, `I am a sub-lessor. If I admit that there were no smoke detectors, I may be charged with a crime or someone may sue me.' A reasonable person would not be concerned that making such a statement would subject them to civil or criminal liability." (July 20, 1999 decision overruling plaintiff's motion for new trial at 5.) We find no abuse of discretion in the trial court's reasoning with respect to this issue. Thus, the trial court did not abuse its discretion in excluding the statement.
Appellant next argues that the statement was not hearsay and was therefore admissible. Appellant claims that he was not offering the statement solely for the truth of the matter asserted, i.e., that there were no smoke detectors present but, rather, to explain Thompson's conduct during the course of his investigation. Appellant notes that, on cross-examination, appellee vigorously attacked the thoroughness and adequacy of Thompson's investigation. In so doing, appellee suggested to the jury that the time Thompson spent at the scene was inadequate, that no canines were brought in, that it was dark, and that he failed to sift through all the debris to look for a piece of a smoke detector. (Tr. 46-47, 49, 58.) Appellant argues, therefore, that the statement by Clegg would have explained the investigator's belief that there was no need for him to conduct a more extensive investigation.
Although inadmissible as hearsay testimony, this court and other courts have permitted the use of similar such statements as foundation information, i.e., to explain the subsequent investigative activities of police or detectives. See, e.g.,State v. Holt (Aug. 20, 1998), Franklin App. No. 97APA10-1361, unreported. However, there are limits to the use of this type of foundational evidence, and the evidence is often admitted with a limiting instruction.
In this case, appellant failed to raise this argument for admissibility at trial and has consequently waived this argument on appeal. McCormick on Evidence (5 Ed. 1987), 219, Section 51 at fn. 21. See Limle v. Laboratory Corp. of America
(May 2, 2000), Franklin App. No. 99AP-1007, unreported (failure to timely advise trial court of possible error, by objection or otherwise, results in a waiver of the issue for purposes of appeal). See, also, State v. Davis (1964), 1 Ohio St.2d 28, paragraph two of the syllabus (accused cannot, after trial, successfully maintain that the court erred in overruling the objection by then relying on a valid ground for his objection which was not called to the court's attention at a time when such error could have been avoided and corrected). The third assignment of error is not well-taken.
In his fourth assignment of error, appellant argues the trial court erred in permitting irrelevant testimony of the decedent's alleged drinking habits. Over appellant's objection, the trial court admitted testimony from Marjorie Clegg concerning Mr. McDaniel's drinking habits. Specifically, Clegg testified:
 Q. Based on the length of time that you knew Mr. McDaniel, did you develop any knowledge of his drinking habits?
A. Yeah, I knew he drank.
Q. How would you describe his drinking?
A. Well, he drank. [Tr. 194-195.]
Appellant argues that this testimony had no relevance to any issues before the jury and was inflammatory and prejudicial. Appellant notes that the medical testimony was that Mr. McDaniel's blood alcohol content of .04 did not impair his ability to escape the fire. Thus, this testimony had no relevance and was introduced only to imply that Mr. McDaniel was an alcoholic. Appellee responds that the trial court limited the testimony with respect Mr. McDaniel's drinking habits and that the issue of alcohol use was relevant because appellant had to prove conscious pain and suffering to prevail on his survivorship claim.
The relevance of the questions to Mrs. Clegg about Mr. McDaniel's drinking habits was marginal at best. However, the prejudicial effect from the limited amount of testimony was harmless. The jury had already heard testimony that Mr. McDaniel had ingested alcohol on the day of the fire. At the time, limited portions of Mrs. Clegg's deposition were read to the jury, and the jury was already aware that Mr. McDaniel used alcohol. The fourth assignment of error is not well-taken.
In the fifth and sixth assignments of error, appellant argues the trial court failed to construe the validity of the written lease agreement between appellee and Mrs. Clegg, and erred in publishing the lease to the jury. The lease agreement was admitted as evidence that a landlord/tenant relationship existed between appellee and Mrs. Clegg. However, the issue of whether a landlord/tenant relationship existed between appellee and Marjorie Clegg never appeared to be in dispute.
Regardless, appellant has failed to demonstrate how he was prejudiced by the alleged failure to construe the written instrument. Even if the lease were invalid, a court may give full effect to a defective instrument in order to carry out the intentions of the parties. Seabrooke v. Garcia (1982), 7 Ohio App.3d 167,169; R.C. 2719.01. Moreover, at the time appellee moved for a directed verdict, the trial court rejected appellant's theory that the written agreement was invalid. The trial court stated, in pertinent part, as follows:
 SO I'M GOING TO HOLD, TO BE VERY SPECIFIC HERE, THAT THERE WAS AN OBLIGATION ON THE PART OF MR. TURIEL UNDER THE COLUMBUS CODE TO INSTALL SMOKE DETECTORS WHEN HE LEASED THE PROPERTY TO MRS. CLEGG; THAT THERE IS SUFFICIENT EVIDENCE THAT THERE WAS A LEASE BETWEEN THE TWO OF THEM, AT LEAST ON A MONTH-TO-MONTH TENANCY TO REJECT MR. FITCH'S ARGUMENT THAT IT WAS A DEFECTIVE WRITTEN LEASE, SO THERE IS A LESSOR/LESSEE RELATIONSHIP BETWEEN TURIEL AND CLEGG. [Tr. 439.]
Appellant's real concern arises in the context of the sixth assignment of error. Appellant sought to keep the jury from seeing the written lease because it contained a provision that precluded subleasing the property without the written permission of appellee. A key issue in the trial was whether appellee knew that Mr. McDaniel was renting a room at 1025 East 17th Avenue. Under the Columbus City Code, if smoke detectors had not been previously installed or had not been installed properly, upon a change in occupancy, the lessor or sublessor is required to install them. If smoke detectors had been previously installed, the lessor or sublessor is required to inspect and repair and replace them as needed. Columbus City Code ("C.C.") Section 4529.13. The jury heard conflicting evidence as to whether appellee was aware that Marjorie Clegg was subleasing the premises to Mr. McDaniel. There was no evidence that Mrs. Clegg ever gave written notice to appellee that she was subleasing the premises. Therefore, the prohibition in the lease agreement tended to support appellee's testimony that he was not aware that there had been a change of occupancy when Mr. McDaniel moved in. Accordingly, the trial court did not abuse its discretion in admitting the exhibit. The fifth and sixth assignments of error are not well-taken.
In the seventh assignment of error, appellant argues that the trial court erred in overruling appellant's objection to appellee's counsel's closing argument. Specifically, appellant objected during appellee's closing argument to the following statement:
 PLAINTIFF'S CASE IS BASED ON TEN-YEAR-OLD CIRCUMSTANTIAL EVIDENCE. IT'S BASED UPON THE PREMISE, ALTHOUGH MR. FITCH WAS WISE ENOUGH NOT TO FLAT OUT CALL MR. TURIEL A LIAR, SO I'LL BE THE ONE THAT USES THAT WORD, BUT I THINK IT'S FAIR TO SAY THAT THE PLAINTIFF'S CASE IS BASED UPON THE ALLEGATION THAT RICH TURIEL WAS LYING UNDER OATH. DON ACQUISTA —
 MR. FITCH: I AM GOING TO OBJECT TO THIS, YOUR HONOR. I AM GOING TO OBJECT TO THIS. HE IS IMPLYING THAT I SAID THAT, WHICH I THINK CLEARLY — OR INFERRING IT.
 THE COURT: NO, I THINK HE CLEARLY SAID THAT YOU DID NOT STATE THAT. IT'S WITHIN THE BOUNDS OF ARGUMENT, SO I'LL OVERRULE THE OBJECTION. I THINK IT'S CLEAR THAT MR. RANKIN SAID THAT PLAINTIFF'S COUNSEL DID NOT MAKE THAT ACCUSATION IN THE COURTROOM, HE DIDN'T STATE THAT OR USE THOSE WORDS, BUT GO AHEAD. [Tr. 658.]
It is axiomatic that great latitude is afforded counsel in the presentation of closing argument. Pang v. Minch (1990),53 Ohio St.3d 186, 194. The assessment of whether the permissible bounds of closing argument have been exceeded is, in the first instance, a discretionary function to be performed by the trial court. Such determination will not be reversed on appeal absent an abuse of discretion. Id. at paragraph 3 of the syllabus.
The credibility of appellee was a key issue in the case. The reference that appellant's case was based upon the premise that appellee was a liar amounts to a characterization of appellant's theory of the case. On rebuttal, appellant availed himself of the opportunity to argue that he did not call the witnesses liars, but that bias or an interest can color someone's testimony. The trial court did not abuse its discretion by overruling the objection. The seventh assignment of error is not well-taken.
In the eighth and ninth assignments of error, appellant argues the trial court improperly instructed the jury as to appellee's duty as the owner of a "dwelling unit sharing a bath." Appellant sought an instruction that appellee, as the owner or operator of a dwelling unit sharing a bath had additional duties beyond the installation, inspection, repair, or replacement of smoke detectors pursuant to C.C. 4529.09. The trial court rejected the proposed instruction finding that there was minimal evidence that appellee knew of the existence of Mr. McDaniel as a roomer, and no evidence that appellee was running a rooming house. (Tr. 596.)
The Columbus City Code requires the owner or operator of any multiple dwelling, rooming house or dwelling unit sharing a bath to be responsible for the installation and maintenance of fire prevention devices including a fire alarm. C.C. 4525.09. A multiple dwelling is defined as "any dwelling containing three (3) or more dwelling units." C.C. 4501.20. A rooming house is defined as "every dwelling, other than hotels and motels, kept, used or held out to be a place where sleeping or lodging rooms are offered for pay to three (3) or more persons and shall include but not be limited to uses defined in the Zoning Code at Chapter C.C. 3303 as `apartment hotel,' `boarding home,' `residential care facility,' `rooming house' and `shared living facility.'" C.C. 4501.32. A "dwelling unit sharing a bath" is not specifically defined, but the code defines a "dwelling unit" as "one or more habitable rooms forming a single habitable unit within a dwelling with facilities which are used or intended to be used by one (1) or more persons for living, sleeping, cooking and eating." C.C. 4501.11.
Here, whether or not appellee knew Mrs. Clegg was subleasing a room to Mr. McDaniel, the living arrangement did not constitute a dwelling unit sharing a bath. Mrs. Clegg rented a bedroom on the second floor to Mr. McDaniel. He shared a bath with the other residents of the dwelling and had use of the kitchen. (Tr. 193.) Such an arrangement does not constitute a dwelling unit sharing a bath, as Mr. McDaniel's "unit"/room did not provide for separate cooking facilities. The premises did not constitute a rooming house because sleeping rooms were not offered for pay to three or more persons. As such, the trial court properly refused to instruct the jury that appellee was responsible for the additional requirements of a dwelling unit sharing a bath. The eighth and ninth assignments of error are not well-taken.
In the tenth assignment of error, appellant argues the trial court erred in not instructing the jury under a common law negligence theory. Appellant sought an instruction that compliance with the law constitutes a minimum standard of care that does not prevent a finding of negligence where a reasonable person would have taken additional precautions. Historically, at common law, landlords were immune from tort claims by tenants, and breach of a duty imposed by statute has been one exception to the landlord's immunity from tort claims by tenants. Shroades v.Rental Homes (1981), 68 Ohio St.2d 20, 23. Appellant has cited no legal authority for the proposition that appellee owed appellant any additional duties beyond those imposed by the applicable statutes and ordinances. The tenth assignment of error is not well-taken.
Based on the foregoing, appellant's ten assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
BRYANT and KENNEDY, JJ., concur.