OPINION
{¶ 1} The defendant/appellant, James Little, Jr., appeals the judgment of the Seneca County Court of Common Pleas, finding him guilty of two counts of Rape, violations of R.C. 2907.02(A)(1)(b) (A)(2), respectively, and felonies in the first degree, and of one count of Gross Sexual Imposition, a violation of R.C. 2907.05(A)(4) and a felony in the third degree. For the following reasons, we hereby affirm the judgment of the trial court.
 {¶ 2} The facts and procedural history relevant to the instant appeal are as follows. On July 23, 2000, the appellant was home alone with his two stepdaughters and his son. According to one of his stepdaughters, who was eleven years old at the time of the incident, the appellant entered her room as she was dressing after a shower. He told her to remove her clothing. She complied and got into her bed and under the covers. According to the victim's testimony, the appellant then got into bed with her and began to lick her genitals, touched her with his penis, and tried to insert his penis into her vagina.
 {¶ 3} The appellant was indicted on five counts: two counts of Rape in violation of R.C. 2907.02(A)(1)(b) (A)(2), one count of Rape in violation of R.C. 2907.02(A)(2), one count of Gross Sexual Imposition in violation of R.C. 2907.05(A)(4), and one count of Gross Sexual Imposition in violation of R.C. 2907.05(A)(1). The case proceeded to trial on November 19, 2001. At the conclusion of the proceedings, which lasted several days, a jury found the appellant guilty of two of the Rape counts and one of the counts of Gross Sexual Imposition. The trial court sentenced the appellant to serve two life sentences for the Rape convictions, and a five-year sentence for the Gross Sexual Imposition conviction, all of which were to run concurrently.
 {¶ 4} The appellant now appeals, presenting five assignments of error for our review.
 ASSIGNMENT OF ERROR NO. I {¶ 5} "The trial court erred in refusing to allow the appellant to introduce evidence of the alleged victim's prior sexual history."
 {¶ 6} The appellant argues that the trial court erred in ruling that evidence of the victim's alleged prior sexual activity was inadmissible, first, because the evidence would have fallen under one of the exceptions to the Ohio Rape Shield Law and, second, because exclusion of the evidence violated the appellant's Sixth Amendment right to confront witnesses against him.
 {¶ 7} The State of Ohio's rape shield law, R.C. 2907.02(D), prohibits "[e]vidence of specific instances of the victim's sexual activity, opinion evidence of the victim's sexual activity, and reputation evidence of the victim's sexual activity * * * *" except for certain limited purposes. The statute was enacted to fulfill several state goals: "First, by guarding the complainant's sexual privacy and protecting her from undue harassment, the law discourages the tendency in rape cases to try the victim rather than the defendant. In line with this, the law may encourage the reporting of rape, thus aiding crime prevention. Finally, by excluding evidence that is unduly inflammatory and prejudicial, while being only marginally probative, the statute is intended to aid in the truth-finding process."[1]
 {¶ 8} It is within the sound discretion of a trial court to determine the relevancy of evidence and apply R.C. 2907.02(D) to best meet the purpose behind the statute.[2] Notwithstanding, evidence that is generally excluded under the rape shield law is admissible to show the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender.[3] However, even this evidence is only admissible "to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value."[4]
 {¶ 9} The prosecution presented evidence that the victim's hymen was lacerated. The testimony of expert witnesses established that, based on the pattern of injury, the lacerations resulted from sexual intercourse. The appellant argues that these lacerations are like a disease and that, therefore, he should be allowed to introduce evidence of the victim's prior sexual activity in order to show the source of the disease.
 {¶ 10} The appellant cites no case law and failed to provide at trial any expert testimony supporting his contention. Moreover, our research has yielded no cases espousing his position. However, an examination of the medical definitions of "disease" and "injury" refute the appellant's argument. Disease is defined as "* * * a pathological condition of the body that presents a group of symptoms peculiar to it and which sets the condition apart as an abnormal entity differing from other * * * pathological body states."[5] On the other hand, an "injury" is described as "[t]rauma or damage to some part of the body."[6] Thus, "disease" connotes the presence of some type of pathogen or microorganism that acts as the causative agent of the condition. There was no indication that such an agent brought about the victim's lacerated hymen. Furthermore, the medical testimony presented trial repeatedly referred to the victim's condition as an "injury."
 {¶ 11} Even assuming arguendo that the victim's injuries are synonymous with "disease," neither of the doctors who testified for the state suggested that the appellant caused the lacerations. Although the medical evidence established that sexual activity caused the lacerations, it did not adduce their specific source. Thus, the evidence was not used to prove the origin of the victim's condition. As the statute provides an exception to the rape shield law only for the purpose of showing the origin of disease where origin is in issue, the appellant's evidence was properly excluded.
 {¶ 12} We note finally that the sum total of the appellant's proffered evidence regarding the victim's alleged previous sexual encounters was (1) a letter written by the victim's sister which stated, "I really think [T.W.], my sister, did something with her boyfriend and she was scared of getting in trouble" and (2) the appellant's hope that, if put on the stand, the two girls would confess to the victim being sexually active. No boyfriend was ever identified. The "something" in the letter could have been any one of the myriad of activities that are taboo to the mind of an eleven year old. Accordingly, this evidence was more inflammatory and prejudicial than probative and the trial judge did not abuse his discretion by excluding it.
 {¶ 13} The appellant also argues that, in this instance, the application of the rape shield law violated his Sixth Amendment right to confrontation, citing State v. Williams[7] in support. In Williams, the Ohio State Supreme Court applied a balancing test to determine whether evidence clearly prohibited by the rape shield law was nevertheless admissible in furtherance of a defendant's constitutional rights.[8] The balancing test requires a weighing of the state interest, which the statute is designed to protect, against the probative value of the excluded evidence.[9]
 {¶ 14} The Williams court emphasized that, in order to be admissible, the contested evidence must not be used simply for impeachment purposes but, rather, must be probative of a determinative issue of fact in the case.[10] For instance, in Williams, the victim claimed that she never engaged in consensual sex with men because she was gay. The defendant wished to present testimony at trial that would have refuted her assertion. The court ruled that such testimony would be admissible because it tended to "negate the implied establishment of an element of the crime charged[;]" i.e., consent.[11]
 {¶ 15} The evidence proffered by the appellant in the case sub judice does not negate the implied establishment of an element of the crime. Specifically, whether or not the victim had sex at some time with a boyfriend is irrelevant to whether the appellant raped her on the date and time in question. Thus, the evidence has no probative value; its introduction would serve no purpose but to impeach the victim's credibility. It was properly excluded from evidence.
 {¶ 16} Accordingly, the appellant's first assignment of error is not well taken and is hereby denied.
 ASSIGNMENT OF ERROR NO. II {¶ 17} "The trial court erred in its instruction to the jury on the essential element of force in counts one and two."
 {¶ 18} For his second assignment of error, the appellant asserts that the trial court's jury instructions regarding the use of force, an essential element of the rape charges, was erroneous. Based on the following, we disagree.
 {¶ 19} Initially, we note that the giving of jury instructions is within the sound discretion of the trial court and will not be disturbed on appeal unless the record affirmatively demonstrates an abuse of discretion.[12] An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.[13]
 {¶ 20} The trial court in the instant case offered the following definition of "force" to the jury:
 {¶ 21} "Force. Force means any violence, expulsion, or constraint physically exerted by any means upon or against a person or thing. When the relationship between the victim and the Defendant is one of child and stepparent, the element of force need not be openly displayed or physically brutal. It can be subtle and psychological.
 {¶ 22} "If you find beyond a reasonable doubt that under the circumstances in evidence the victim's will was overcome by fear or duress, the element of force has been proved."
 {¶ 23} The court took its definition of "force" from the principles set forth in State v. Eskridge.[14] In Eskridge, the Ohio State Supreme Court stated: "The force and violence necessary to commit the crime of rape depends upon the age, size and strength of the parties and their relation to each other. With the filial obligation of obedience to a parent, the same degree of force and violence may not be required upon a person of tender years, as would be required were the parties more nearly equal in age, size and strength."[15]
 {¶ 24} The court further acknowledged that, due to parental authority, an element of coercion is inherent in a case where a parent rapes a child.[16] "Force need not be overt and physically brutal, but can be subtle and psychological. As long as it can be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established."[17]
 {¶ 25} The appellant claims that his case is distinguishable fromEskridge for two reasons. First, he asserts that because he was the victim's stepfather, he could not assert the same authority over her if she was his natural daughter. Furthermore, he contends that the victim's own testimony revealed that she felt no filial obligation of obedience towards the appellant.
 {¶ 26} Many courts have found that the relaxed standard of force is applicable where the defendant is a stepparent, or another type of authority figure.[18] Furthermore, we note that the victim also testified that she was afraid of the appellant and that she had heard rumors that he raped children and killed people. It was for the jury to decide whether the particular facts of this case supported finding beyond a reasonable doubt that the victim's will was overcome by fear or duress. The trial court did not err in its definition of "force."
 {¶ 27} The appellant's second assignment of error is hereby denied.
 ASSIGNMENT OF ERROR NO. III {¶ 28} "The trial court erred in denying the appellant's motion for judgment of acquittal pursuant Criminal Law 29."
 {¶ 29} The appellant contends that the trial court should have granted the Crim.R. 29(A) motion, made at the close of his case in chief, because the state failed to prove that he compelled the victim to submit by force or threat of force, an essential element of the two rape charges. We find the appellant's argument unpersuasive.
 {¶ 30} Crim.R. 29 governs motions for acquittal. It mandates as follows: "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses."
 {¶ 31} When reviewing a judgment of acquittal, the issue is whether, viewing the evidence in the light most favorable to the prosecution, the evidence is such that "any reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt."[19] An appellate court abuses its discretion by substituting its judgment for that of the trier of fact as to the weight or sufficiency of the evidence.[20]
 {¶ 32} The force and violence necessary to commit the crime of rape depends upon the age, size and strength of the parties and their relation to each other; thus, with the filial obligation of obedience to a parent, the same degree of force and violence may not be required for a person of tender years, as would be required where the parties are more nearly equal in age, size and strength.[21] Furthermore, as we discussed in the previous assignment of error, because the victim was the appellant's stepdaughter, the state needed only to show that her will was overcome by fear or duress in order to establish that force was used.[22]
 {¶ 33} The victim testified that she submitted to the appellant's demands on the day of the rape because she was scared. When asked what made her scared, she stated: "I have always been scared of him because I've just heard stuff about him." When asked on cross-examination to specify what she had heard about the appellant that made her scared, she testified: "He's raped kids before and killed people and robbed jewelry stores." Evidence also revealed that the victim was eleven years old and weighed ninety-five pounds. By contrast, the appellant was a twenty-nine year old man. The jury was able to observe the size difference between the appellant and the victim in court, as both parties took the stand and testified.
 {¶ 34} The victim's mother admitted that she allowed her daughters to share a room for a period of time because they did not want to be around the appellant. Furthermore, the appellant admitted that he knew that his stepdaughters were "leery" of him and did not want to be around him. Finally, the victim testified that she believed that her stepfather molested her sister but that her mother refused to believe her sister. All of this evidence, if believed, supports a finding that the victim was overcome by fear at the time of the incident.
 {¶ 35} Construing this evidence in the light most favorable to the prosecution, we conclude that a reasonable trier of fact could find beyond a reasonable doubt that the appellant compelled the victim to submit by force or threat of force. Accordingly, the appellant's third assignment of error is not well taken and is hereby denied.
 ASSIGNMENT OF ERROR NO. IV {¶ 36} "The trial court erred in overruling the appellant's Motion to Suppress."
 {¶ 37} The appellant claims that the affidavit and testimony provided in support of a warrant issued for genetic testing lacked probable cause and that, therefore, all results of the tests should have been suppressed.
 {¶ 38} When determining whether there is probable cause to support a search warrant, the issuing magistrate must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the `veracity' and `basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."[23]
 {¶ 39} In reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant issued by a magistrate, neither a trial court nor an appellate court should substitute its judgment for that of the magistrate by conducting a de novo determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant. Rather, the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, trial and appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant.[24]
 {¶ 40} The appellant contends that the affidavit in support of the search warrant provides insufficient basis for probable cause because it is based on hearsay statements made by the eleven-year-old victim to Police Chief Gary Holland. The appellant claims that, due to the age of the hearsay informant, her credibility and competency is questionable.
 {¶ 41} Crim.R. 41(C) permits a finding of probable cause to be based upon hearsay "in whole or in part, provided there is substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished." To begin with, we note that, according to Ohio Evidence Rule 601, persons over age ten are presumed competent to be witnesses. Thus, there was no reason to question the victim's competency due to her age. Furthermore, it was apparent from Chief Holland's affidavit that the victim provided extensive detail about the time and place where the rape occurred, and that she described expansively the specific criminal acts perpetrated by the appellant. This detail provided a substantial basis for believing the credibility of the witness and for trusting that a factual basis existed for the information she furnished. Accordingly, the trial court properly denied the appellant's motion to suppress. The appellant's fourth assignment of error is not well taken and is hereby overruled.
 ASSIGNMENT OF ERROR NO. V {¶ 42} "The trial court erred in inviting the jury to ask questions of witnesses over the objection of the defense."
 {¶ 43} In his final assignment of error, the appellant contends that it was error for the trial court to invite jurors to ask questions of witnesses, notwithstanding the fact that no questions were actually asked by jurors during the course of the trial. Based on the following, we disagree with the appellant.
 {¶ 44} The appellant cites our recent decision in State v.York[25] as support for his argument. In York, we held that "inviting questioning by jurors, under any circumstances, constitutes plain error."[26] According to the Ohio State Supreme Court, "[w]hen a court of appeals engages in a plain-error analysis, it must conduct a complete review of all relevant assignments of error in order to determine whether a manifest miscarriage of justice has occurred that clearly affected the outcome of the trial."[27]
 {¶ 45} The York decision provided a detailed recitation of the problems underlying allowing jurors to question witnesses. In order for any of the problems we cited in York to manifest, a juror must actually ask a question. If no juror posits a question to a witness throughout the course of the trial, then a defendant cannot claim that the mere potential of questioning by jurors clearly affected the outcome of his or her trial. Accordingly, we hereby clarify our decision in York and hold that there is no plain error where jurors were permitted to question witnesses but did avail themselves of that opportunity.
 {¶ 46} Accordingly, the appellant's final assignment of error is not well taken and is hereby denied.
 {¶ 47} Having found no error prejudicial to the appellant, in the particulars assigned and argued, we affirm the decision of the trial court.
Judgment affirmed.
[1] State v. Gardner (1979), 59 Ohio St.2d 14, 17-18.
[2] State v. Williams (1986), 21 Ohio St.3d 33, 40, quoting State v.Leslie (1984), 14 Ohio App.2d 343, 346.
[3] R.C. 2907.02(D).
[4] Id.
[5] Taber's Cyclopedic Medical Dictionary (14 ed. 1981) 415.
[6] Id. at 730.
[7] (1986), 21 Ohio St.3d 33.
[8] Id.
[9] Id. at 35, quoting State v. Gardner (1979), 59 Ohio St.2d 14,17.
[10] Id. at 36.
[11] Id.
[12] State v. Martens (1993), 90 Ohio App.3d 338, 343.
[13] State v. Adams (1980), 62 Ohio St.2d 151, 157.
[14] (1988), 38 Ohio St.3d 56.
[15] Id. at paragraph one of the syllabus.
[16] Id. at 58.
[17] Id. at 58-59.
[18] State v. Dye (1998), 82 Ohio St.3d 323; State v. Fowler (1985),27 Ohio App.3d 149; State v. Gordon (Apr. 6, 1994), Greene App. No. 92 CA 127; State v. Waites (Aug. 19, 1994), Lake App. No. 93-L-009; State v.Fox (March 16, 1999), Wyandot App. No. 16-98-1.
[19] State v. Jenks (1991), 61 Ohio St.3d 259, 273, superseded by state constitutional amendment on the grounds in State v. Smith
(1997), 80 Ohio St.3d 89.
[20] State v. Walker (1978), 55 Ohio St.2d 208.
[21] State v. Labus (1921), 102 Ohio St. 26, 38-39.
[22] Eskridge, at 58-59.
[23] State v. George (1989), 45 Ohio St.3d 325, paragraph one of the syllabus, quoting Illinois v. Gates (1983), 462 U.S. 213, 238-239.
[24] Id. at paragraph two of the syllabus.
[25] (March 28, 2002), Seneca App. No. 13-01-19.
[26] Id.
[27] State v. Hill (2001), 92 Ohio St.3d 191, syllabus.