[Cite as *State v. Szorady*, 2011-Ohio-1800.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 95045

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## JOHN F. SZORADY

DEFENDANT-APPELLANT

---

### JUDGMENT:
### AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-526119

**BEFORE:** Keough, J., Blackmon, P.J., and Jones, J.

**RELEASED AND JOURNALIZED:** April 14, 2011

**ATTORNEY FOR APPELLANT**

Craig M. Jaquith
Office of Ohio Public Defender
Assistant State Public Defender
250 East Broad St., Ste. 1400
Columbus, OH 43215

**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor
Gregory Mussman
Jesse W. Canonico
Assistant Prosecuting Attorneys
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, OH 44113

KATHLEEN ANN KEOUGH, J.:

{¶ 1} Defendant-appellant, John F. Szorady, appeals from the trial court's judgment finding him guilty of rape, sexual battery, pandering sexually-oriented matter involving a minor, intimidation, and possession of a criminal tool, and sentencing him to 74 years incarceration. For the reasons that follow, we affirm.

## I. Procedural History

**{¶ 2}** In March 2009, a Cuyahoga County grand jury indicted Szorady in a 108-count indictment in Case No. CR-522235.

**{¶ 3}** In July 2009, a new indictment was issued in Case No. CR-526119 concerning the same conduct. The new indictment included 62 counts: 29 counts of rape, 29 counts of sexual battery, one count of pandering sexually-oriented material involving a minor, one count of intimidating a witness, one count of possession of criminal tools, and one count of corrupting another with drugs. The rape and sexual battery counts carried repeat violent offender and sexually violent predator specifications. The State subsequently dismissed the first indictment and proceeded on the second indictment.

**{¶ 4}** Szorady's court-appointed counsel withdrew in May 2009 and the court appointed new counsel for Szorady; one month later, counsel asked to withdraw due to conflicts with Szorady. The trial court again appointed new counsel for Szorady; after two months that lawyer moved to withdraw because Szorady had written letters that contained allegations impugning the lawyer's integrity. The court granted counsel's motion to withdraw and appointed another lawyer for Szorady. Shortly before trial, Szorady wrote to the judge asking to waive his right to counsel. After a hearing, Szorady withdrew his request and the matter proceeded to a jury trial.

{¶ 5} The trial court dismissed several counts at trial pursuant to Crim.R. 29. The jury found Szorady guilty of the remaining counts, but the trial court declared a mistrial prior to sentencing upon learning that the jury had mistakenly considered an improper exhibit during deliberations.

{¶ 6} After trial, counsel for Szorady moved to withdraw because Szorady had filed a grievance against him. In addition, Szorady filed a motion to waive his right to counsel and represent himself at the rescheduled trial. In his motion, Szorady acknowledged that the court had appointed four lawyers for him, but asserted that all four lawyers were, for various reasons, deficient and that "the only way a valid and meaningful defense will be prepared and presented in his behalf is if he does it himself."

{¶ 7} After a hearing, the trial court granted Szorady's motion. Subsequently, upon being advised that the Ohio Supreme Court had denied Szorady's affidavit of disqualification against the judge, the trial court again set the matter for trial. Szorady waived his right to a jury trial and the case was heard by the judge. Szorady represented himself during trial, with the lawyer who represented him at the first trial serving as advisory counsel.

{¶ 8} At the close of the State's evidence, the trial judge dismissed four counts of rape (counts 1, 2, 25, and 26), four counts of sexual battery (counts 30, 31, 52, and 53), one count of corrupting another with drugs (count 62), and all of the sexually violent predator specifications. The court subsequently

found Szorady not guilty of counts 3, 8, 9, 12, 13, and 16 (rape), and counts 32, 33, 36, 37, 46, and 47 (sexual battery), and guilty of the remaining counts of rape, sexual battery, pandering, intimidation, and possession of a criminal tool, as well as the repeat violent offender specifications attached to the rape and sexual battery convictions. The trial court merged the sexual battery counts with the corresponding rape counts and sentenced Szorady to a total of 74 years incarceration; it also declared him to be a Tier III sex offender. This appeal followed.

## II. The Victim's Trial Testimony

{¶ 9} E.S.,[1] the victim, testified that during the relevant time period she lived with her mother, grandmother, and brother in Cleveland. E.S.'s mother had a romantic relationship with Szorady and in 2004, after he was released from prison, Szorady moved in with her. E.S. was then 13 years old. E.S. testified that from the time he moved in, Szorady was responsible for "all of the parenting duties" regarding E.S. and her brother, including disciplining them, setting house rules, and determining privileges. E.S.'s mother worked the night shift Sundays through Thursdays at a local factory and was gone between 10:00 p.m. and 8:00 a.m. those days.

---

[1]We refer to the victim by her initials in accord with this court's policy of protecting the identities of child victims of crime.

{¶ 10} E.S. testified that she was afraid of Szorady because when he became angry, he was "violent, belligerent, [and] intimidating." He would slap her and her brother, and once grabbed her by her throat. Another time he dragged E.S. out of school by her hair. E.S. testified that Szorady called her names like "bitch, slut, whore, things like that." Szorady also physically abused E.S.'s mother, including slapping her, hitting her with a cabinet door, and biting her nose. E.S. testified that Szorady and her mother used drugs at home, including heroin, crack cocaine, ecstasy, and marijuana.

{¶ 11} According to E.S., Szorady first raped her on a camping trip in August 2004, when she was 13 years old. Szorady gave her alcohol until she was drunk and passed out in his van. In the morning, she noticed blood in her underwear and Szorady told her that she did "crazy things" when she was drunk.

{¶ 12} Later that summer, Szorady forced E.S. to ingest heroin until she was incapacitated, and then penetrated her vagina with his finger. He then forced her to perform oral sex on him, and then had intercourse with her.

{¶ 13} E.S. testified that Szorady raped her "almost every day" from August 2004 to January 2009, when she finally told her then-boyfriend what had been happening. She said that Szorady would typically rape her while her mother was at work. Around his birthday in November, Szorady would expect "special nights" of sexual activity from E.S. as a gift to him.

{¶ 14} E.S. testified that her mother typically took a week off work around Christmas, thereby limiting Szorady's access to E.S. Szorady would tell E.S. that he expected special sexual favors from her before her mother's vacation and would rape her for longer periods of time and in a rougher fashion on those nights. In addition, Szorady demanded that E.S. wear special outfits on those occasions and would rape her anally. E.S. testified she was afraid that if she refused his advances, Szorady would become violent with her, her brother, or her grandmother. She testified further that she became pregnant by Szorady in March 2008, and had an abortion.

{¶ 15} Szorady moved to his own apartment in January 2009. Szorady and E.S.'s mother twice arranged for E.S. to stay at Szorady's home so he could bring her to school in the morning. E.S. testified that on both occasions, Szorady forced her to perform oral sex on him and engage in intercourse. On one of the occasions, he showed her a video file on his computer that depicted him and E.S. having sex.

{¶ 16} After Szorady moved out, E.S. tried to distance herself from him in order to avoid his advances. But Szorady would call her, text her, and leave voice mail messages expressing his displeasure that she was avoiding him. He threatened to give photographs of him and E.S. having sex to her school, her grandmother, and her boyfriend.

{¶ 17} One evening in February 2009, Szorady became unhappy after learning that E.S. was at her boyfriend's house and began texting and calling her incessantly. When E.S.'s boyfriend told her that Szorady was acting more like a jealous boyfriend than a stepfather, E.S. broke down and told him that Szorady had been raping her for years. The boyfriend contacted a school counselor, who called the police.

{¶ 18} The police subsequently searched Szorady's home, where they found computer files that showed Szorady raping E.S. In addition, they found numerous text messages to E.S. on Szorady's cell phone. In one, he told her what type of sex he expected that night; in another, he thanked her for the sex; and in others, he threatened to release the videos to various persons if she refused to have sex with him.

## III. Waiver of Counsel

{¶ 19} In his first assignment of error, Szorady argues that the trial court committed reversible error because it accepted his waiver of counsel without ascertaining that it was knowingly, intelliently, and voluntarily made.

{¶ 20} "The Sixth Amendment, as made applicable to the states by the Fourteenth Amendment, guarantees that a defendant in a state criminal trial has an independent constitutional right of self-representation and that he may proceed to defend himself without counsel when he voluntarily, and

knowingly and intelligently elects to do so." *State v. Gibson* (1976), 45 Ohio St.2d 366, 345 N.E.2d 399, paragraph one of the syllabus, citing *Faretta v. California* 91975), 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562.

{¶ 21} However, "courts are to indulge in every reasonable presumption against the waiver of a fundamental constitutional right, including the right to be represented by counsel." *State v. Dyer* (1996), 117 Ohio App.3d 92, 95, 689 N.E.2d 1034. "In order to establish an effective waiver of right to counsel, the trial court must make sufficient inquiry to determine whether defendant fully understands and intelligently relinquishes that right." *Gibson*, paragraph two of the syllabus. "'To be valid, such waiver must be made with an apprehension of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the matter.'" *Gibson* at 406, quoting *Von Moltke v. Gillies* (1948), 332 U.S. 708, 723, 68 S.Ct. 316, 92 L.Ed 309.

{¶ 22} The record demonstrates that the trial judge reviewed the charges and all possible penalties with Szorady. The trial court also informed Szorady that his former lawyer would act as advisory counsel for him during trial and discussed the limitations of advisory counsel's role. The trial court also advised Szorady of how the trial would be handled and his

appeal rights. Szorady stated that he understood the charges and possible penalties, the role of advisory counsel, and that he would be bound to the rules of evidence, but still wished to represent himself. In light of the foregoing, we find that Szorady knowingly, voluntarily, and intelligently waived his right to counsel.

{¶ 23} Szorady asserts that the trial court's colloquy was deficient because the judge made no effort to determine that his waiver was truly voluntary, rather than forced by legitimate concerns regarding his appointed counsel. But the record is clear that Szorady did not, in fact, have legitimate concerns about his appointed counsel. He found fault with all four lawyers the court had appointed for him, forcing three of his lawyers to ask to withdraw, and, as evidenced by his affidavit of prejudice, was also unhappy with the trial judge. The trial judge was well aware that Szorady's concerns about defense counsel were not valid and, hence, there was no reason to inquire about the legitimacy of Szorady's concerns. Appellant's first assignment of error is therefore overruled.

## III. The Rape Shield Statute

{¶ 24} During trial, E.S. testified that she became pregnant in March 2009 by Szorady and subsequently had an abortion. The trial court barred Szorady from questioning E.S. regarding whether she had sex with other individuals in the time frame that would have been consistent with the

aborted pregancy. In his second assignment of error, Szorady contends that the trial court's ruling was in error and that he should have been allowed to cross-examine E.S. regarding her sexual activity with persons other than him.

{¶ 25} R.C. 2907.02(D), commonly known as the rape shield statute, provides that evidence of the victim's prior sexual activity with a person other than the defendant is inadmissible "unless it involves evidence of the origin of semen, pregnancy, or disease, * * * and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value."

{¶ 26} In determining whether prior acts should be admitted, the court must balance the interests of the victim, which the statue is designed to protect, and the defendant's right to confront and cross-examine the State's witnesses. *State v. Williams* (1986), 21 Ohio St.3d 33, 35, 487 N.E.2d 560. If the evidence in question is merely being used to impeach the victim's credibility, it is not of probative value as to the alleged rape itself and should not be admitted. Id.

{¶ 27} Here, it is apparent that Szorady wanted to question E.S. about other sexual partners merely in an attempt to impeach her credibility: he argues that if she were untruthful that he was the father of the baby, her other testimony about him was also likely not true.

{¶ 28} Evidence of sexual activity offered merely to impeach the credibility of the witness is not material to a fact at issue in the case and must be excluded. *State v. Ferguson* (1983), 5 Ohio St.3d 160, 164, 450 N.E.2d 265; *State v. Gardner* (1979), 59 Ohio St.2d 14, 18-19, 391 N.E.2d 337. Accordingly, the trial court did not err in excluding evidence of E.S.'s prior sexual history.

{¶ 29} Appellant's second assignment of error is overruled.

## V.    Rape Convictions

{¶ 30} In his third assignment of error, Szorady contends that the evidence was insufficient to support his convictions for rape.

{¶ 31} The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, Cuyahoga App. No. 92266, 2009-Ohio-3598, ¶12. Courts are to assess not whether the State's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541, 1997-Ohio-52. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 942, paragraph two of the syllabus.

{¶ 32} Szorady was convicted of rape in violation of R.C. 2907.02(A)(2), which provides that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." He contends that the evidence was insufficient to support his rape convictions because the State failed to prove the element of force.

{¶ 33} Force means "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1). Force or the threat of force "can be inferred from the circumstances surrounding sexual conduct." *State v. Schaim* (1992), 65 Ohio St.3d 51, 600 N.E.2d 661, paragraph one of the syllabus. To make a finding of force under R.C. 2907.02, "some amount of force must be proven beyond that force inherent in the crime itself." *State v. Dye* (1998), 82 Ohio St.3d 323, 327, 695 N.E.2d 763.

{¶ 34} In the case of a child victim, a person in a position of authority over the victim can be convicted of rape with the force specification without evidence of express threat of harm or evidence of significant physical restraint. Id. at syllabus. Thus, this court has recognized that "'if the alleged victim is a minor child, evidence of subtle and/or psychological force may be sufficient to support conviction of an accused who is an authority figure to that child, even in the absence of any express threat of harm or significant physical restraint.'" *State v. Milam*, Cuyahoga App. No. 86268,

2006-Ohio-4742, ¶12, quoting *State v. Musgrave*, (Nov. 25, 1998), Summit App. No. 18260. "Force need not be overt and physically brutal, but can be subtle and psychological. As long as it can be shown that the rape victim's will was overcome by fear and duress, the forcible element of rape can be established." *State v. Fowler* (1985), 27 Ohio App.3d 149, 154, 500 N.E.2d 390.

{¶ 35} Szorady was a person in authority over E.S.; she testified that she considered him to be her stepdad and called him "Dad." Hence, because E.S. was a minor when the events occurred, the question is whether Szorady overcame her will by fear or duress. Szorady argues that E.S. testified that she did not try to resist his advances because she did not want to be judged negatively by her family. He contends that a person who was engaged in consensual sex would have testified similarly and, hence, there was insufficient evidence of force to support the rape convictions.

{¶ 36} But E.S. specifically testified that she was afraid that Szorady would get violent if she refused his advances. She also testified that Szorady had physically assaulted her, her brother, and her mother when he got angry at them. This testimony was sufficient to establish the force element of rape and, therefore, Szorady's argument is without merit.

{¶ 37} Szorady next argues that even if his rape convictions were supported by sufficient evidence, they were against the manifest weight of the

evidence. He contends that the trial court's finding of force was unreasonable in light of the "conflicting" and "ambiguous" evidence regarding whether E.S. failed to resist his advances because she wanted to avoid embarrassment if her actions with him were revealed, or whether her will was overcome by fear or duress.

{¶ 38} A challenge to the manifest weight of the evidence attacks the credibility of the evidence presented. *Thompkins* at 387. In determining whether a conviction is against the manifest weight of the evidence, a reviewing court reviews "the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest mniscarriage of justice that the conviction must be reversed and a new trial ordered." Id., citing *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial is reserved for only those "exceptional cases in which the evidence weighs heavily against the conviction." Id.

{¶ 39} This is not that exceptional case. The evidence was neither conflicting nor ambiguous; it was clear that E.S. was afraid of Szorady and feared that he would become violent if she refused his advances. Although she admitted that she did not want to be embarrassed by a revelation of what

had happened, she also testified that she submitted to Szorady's advances because she was fearful of what he would do to her, her brother, and grandmother if she resisted him. E.S.'s brother and mother likewise testified that Szorady would become violent when he was angry. Our review of the record demonstrates that E.S.'s will to resist was overcome by her fear of Szorady; hence, the rape convictions are not against the manifest weight of the evidence.

{¶ 40} Appellant's third assignment of error is therefore overruled.

## V. Consecutive Sentences and Findings of Fact

{¶ 41} In his fourth assignment of error, Szorady contends that the trial court erred in imposing consecutive sentences without making the findings required by R.C. 2929.14(E)(4). He argues that *State v. Foster*, 109 Ohio St.3d 1, 845 N.E.2d 470, 2006-Ohio-856, which severed the judicial fact-finding requirement from Ohio's sentencing statutes, is no longer valid in light of *Oregon v. Ice* (2009), 555 U.S. 160, 129 S.Ct. 711, 172 L.Ed.2d 517.

{¶ 42} The Ohio Supreme court rejected this argument in *State v. Hodge*, 128 Ohio St.3d 1, 941 N.E.2d 768, 2010-Ohio-6320, wherein it determined that *Ice* does not revive the severed sentencing statutes and that "[t]rial court judges are not obligated to engage in judicial fact-finding prior to imposing consecutive sentences unless the General Assembly enacts new legislation requiring that findings be made." There is no current statutory

requirement that trial judges make findings in support of consecutive sentences; hence, Szorady has shown no error.

{¶ 43} Appellant's fourth assignment of error is overruled.

Affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


KATHLEEN ANN KEOUGH, JUDGE

PATRICIA A. BLACKMON, P.J., and
LARRY A. JONES, J., CONCUR